UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STARYL DESIDERIO,

                              Plaintiff,        **ECF Case**

      - against -                        Case No.

HUDSON TECHNOLOGIES, INC.        **COMPLAINT**
and BRIAN COLEMAN,
                     Defendants.

------------------------------------------------------------x

        Plaintiff, Staryl Desiderio, by her attorneys, Moskowitz & Book LLP, for her Complaint against defendants, Hudson Technologies Company and Brian Coleman (collectively "defendants"), respectfully alleges as follows:

## NATURE OF ACTION

        1.    This is an action for damages against defendants for violation of the Family and Medical Leave Act, 29 U.S.C. §2612 et seq. ("FMLA"), and disability and gender discrimination in violation of the New York State Human Rights Law Article 15 §290 *et seq.* (hereafter "NYSHRL"), and the New York City Human Rights Laws §8-101 *et seq.* (hereafter "NYCHRL").

## JURISDICTION AND VENUE

        2.    The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over related claims brought under the New York Executive Law and under New York State common law.

3. Venue in this Court is proper in that defendants maintain principal offices in this District.

## PARTIES

4. Plaintiff, Staryl Desiderio ("plaintiff" or "Ms. Desiderio"), resides in Hillsborough County and the State of Florida. At all relevant times, she met the statutory definition of an "employee" under all applicable statutes.

5. At all relevant times, defendant, Hudson Technologies, Inc. ("Hudson"), is and was a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1 Blue Hill Plaza, Pearl River, NY 10965.

6. Upon information and belief, Hudson employs more than 50 employees in the refrigerant business, and, at all relevant times, Hudson met the definition of an "employer" under all applicable statutes.

7. Defendant, Brian Coleman, ("Mr. Coleman"), upon information and belief, is male, is a resident of the State of New York, and is employed by Hudson as President and Chief Executive Officer, with an office at 1 Blue Hill Plaza, Pearl River, NY 10965.

## FACTS

8. On or about October 10, 2017, Ms. Desiderio was hired by Hudson when it acquired Airgas Refrigerants, Inc., her former employer.

9. Ms. Desiderio worked at the Long Island City location at 38-18 33rd Street, Long Island City, NY during her employment with Hudson, although she also worked remotely during the pandemic, as did other managerial employees.

10. Ms. Desiderio worked for 39 years in total for Hudson and its predecessor companies, Airgas and Refron.

11. Ms. Desiderio was promoted by Brian Coleman on March 24, 2021 to VP of Supply Chain Management, reporting to Mr. Coleman, from VP of Purchasing and was given a raise in recognition of the promotion.

12. Throughout her tenure at Hudson, Ms. Desiderio received multiple promotions, raises and additional stock options in recognition of her excellent performance.

13. Ms. Desiderio never received any corrective personnel action during her employment at Hudson, nor its predecessor companies, REFRON and Airgas Refrigerants during her 39 years of employment.

14. On or about June 4, 2021, Ms. Hagan, Human Resources Manager, called Ms. Desiderio to inform her that an employee had complained that a recently hired Customer Service Manager under Ms. Desiderio's supervision had made inappropriate remarks and mentioned "naked yoga."

15. That employee's manager called Ms. Desiderio later on June 4, 2021 to express her opinion that the employee should be fired for his condescending behavior and inappropriate conversations. Ms. Desiderio asked for patience while the company investigated the complaint.

16. On or about June 4, 2021, Ms. Desiderio requested by phone that Ms. Hagan do a full investigation.

17. On or about June 5, 2021, in a conversation about next steps concerning the employee, Ms. Hagan informed Ms. Desiderio that Hudson's attorneys had advised her that the company could fire the employee or put him on a performance improvement plan, at their discretion. Ms. Desiderio suggested an in-person meeting on Tuesday, June

8, 2021 to decide whether to terminate the employee or take other corrective action in response to his "off-color remarks" and to inform the employee of the decision later the same day.

18. On or about June 8, 2021, Ms. Desiderio came to the Pearl River office for a scheduled meeting with Ms. Hagan and the newly hired Customer Service Manager ("CSM") to discuss the results of the investigation and decide on appropriate disciplinary action, if any, but Ms. Hagan instead informed Ms. Desiderio that the CSM's employment had been terminated immediately at Mr. Coleman's instructions.

19. On or about June 9, 2021, Mr. Coleman called Ms. Desiderio into a conference room in the Long Island City office. He questioned Ms. Desiderio about why she hadn't fired the employee immediately. She replied that she had asked the human resources department to do a full investigation to determine whether termination was appropriate. Mr. Coleman then falsely accused her of keeping the employee on, despite "knowing that he was a predator, just to make your job easier." He angrily yelled at her, getting red in the face. Mr. Coleman, who is approximately 6', at first stood over the seated 5'3" woman as he berated her, then sat and pointed his finger in her face as he continued the verbal abuse.

20. Mr. Coleman then condescendingly told Ms. Desiderio, "I want you to think about what you've done," speaking as if she were a child, apparently referring to her decision to allow Ms. Hagan to investigate, rather than summarily terminating the employee. Mr. Coleman demanded that Ms. Desiderio apologize to everyone involved.

4

21. Upon information and belief, Mr. Coleman's treatment of Ms. Desiderio was motivated by gender discrimination, as he did not similarly berate male employees for personnel decisions.

22. During the weeks following Mr. Coleman's verbal abuse Ms. Desiderio began suffering from panic attacks, anxiety, depression, insomnia, and tearfulness.

23. On or about July 16, 2021 Ms. Desiderio was diagnosed with a serious medical condition, in that she suffered from anxiety, depression, panic attacks, and insomnia that were work-related and which adversely affected her ability to think, concentrate, sleep, work, and interact with others.

24. On or about July 18, 2021, Mike Desiderio, Ms. Desiderio's husband, informed Hudson by email to Mr. Coleman and Nicole Hagan, Hudson's Human Resources Manager, that Ms. Desiderio required medical leave for her serious psychiatric condition.

25. On or about July 22, 2021, Ms. Desiderio promptly completed medical/disability leave forms and forwarded them to Anthem's Life and Disability Claims Service Center.

26. On or about July 23, 2021, Ms. Hagan acknowledged receipt of the medical/disability leave forms.

27. On or about August 11, 2021, Mr. Desiderio confirmed that Hudson had received Ms. Desiderio's doctor's completed FMLA forms.

28. During September, Mr. Desiderio followed up with Ms. Hagan several times regarding whether additional medical documentation was needed, but neither he nor Ms. Desiderio's doctor received any additional forms to complete.

29. During the twelve months preceding her medical leave, Ms. Desiderio worked a full-time schedule, and her total hours exceeded 1,250 hour per year.

30. The Desiderios did not receive any notice from Hudson that Ms. Desiderio's leave was approved or denied, or of any expiration date of the FMLA leave.

31. Hudson paid Ms. Desiderio her prorated sick days, vacation, personal days, and banked paid time off (PTO) during her medical leave.

32. Hudson ceased paying Ms. Desiderio any salary once her PTO was exhausted on or about August 21, 2021.

33. On or about October 12, 2021, Mr. Desiderio informed Mr. Coleman by email that "Star had a setback," referencing Ms. Desiderio's medical condition, and inquired whether Hudson would be interested in offering severance.

34. At no time did Ms. Desiderio resign her employment nor did Mr. Desiderio communicate to defendants that his wife was resigning her employment.

35. On or about October 22, 2021, via email to Mr. Desiderio, Mr. Coleman made an offer of severance to Ms. Desiderio.

36. On or about October 22, 2021, Mr. Desiderio stated Ms. Desiderio wished to exercise her earned stock options.

37. On or about October 27, 2021, Mr. Coleman emailed Mr. Desiderio and falsely stated, "By failing to return to work upon expiration of her FMLA leave, Star effectively resigned her position at Hudson Technologies." This was the first time that any employee of Hudson informed Ms. Desiderio or her husband that there was an expiration date for her FMLA leave or what that date would be.

38. On or about October 27, 2021, Mr. Coleman also falsely claimed that Ms. Desiderio's stock options had been canceled as a result of the "voluntary termination."

39. Upon information and belief, a male employee of Hudson, also at the VP level, was permitted by defendants to remain on paid leave for a period of approximately one year.

40. Upon information and belief, defendants terminated Ms. Desiderio because of her disability, gender, and because she took FMLA leave.

41. Defendants' actions in terminating Ms. Desiderio's employment based on her gender and disability were discriminatory and in violation of the FMLA, NYSHRL, and NYCHRL.

42. Defendants' actions in terminating Ms. Desiderio's employment were in retaliation for her taking FMLA leave in that she was terminated while she was absent from work on FMLA leave.

43. The individual defendant, Mr. Coleman, personally participated in the discriminatory conduct and held a supervisory position with the power over plaintiff to do more than carry out personnel decisions made by others.

44. As a result of the foregoing, plaintiff has suffered, and continues to suffer, loss of income, extreme emotional distress, and damage to her reputation and career.

### FIRST CLAIM FOR RELIEF BY AGAINST HUDSON
### FOR VIOLATING THE FMLA

45. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

46. Hudson failed to provide plaintiff with required notices under the FMLA advising her whether her leave was approved, and the duration of any approved leave.

47. Hudson terminated plaintiff's employment upon notice that she "had a setback" and would require additional leave.

48. Hudson violated the FMLA by not offering to reinstate Ms. Desiderio to her position upon completing her FMLA leave.

49. As a result of Hudson's willful, knowing and intentional violation of the FMLA, plaintiff sustained substantial losses in earnings and other employment benefits, future pecuniary losses and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

### SECOND CLAIM FOR RELIEF BY AGAINST HUDSON
### FOR FMLA RETALIATION

50. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

51. By reason of the foregoing, Hudson retaliated against plaintiff by terminating her as a result of her request for FMLA leave.

52. As a result of Hudson's willful, knowing, and intentional retaliation, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### FOR DISCRIMINATION BASED ON DISABILITY
### UNDER THE NYSHRL

53. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

54. By reason of the foregoing, Hudson discriminated against plaintiff on account of her disability by terminating her because of her disability all in violation of the NYSHRL.

55. As a result of Hudson's willful, knowing, and intentional discrimination, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

**FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
FOR DISCRIMINATION BASED ON GENDER
UNDER THE NYSHRL**

56. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

57. By reason of the foregoing, defendants discriminated against plaintiff on account of her gender by terminating her because she took disability leave, whereas they permitted a male employee to remain on disability leave for approximately one year, all in violation of the NYSHRL.

58. As a result of defendants' willful, knowing, and intentional discrimination, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

**FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
FOR DISCRIMINATION BASED ON DISABILITY UNDER THE NYCHRL**

59. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

60. By reason of the foregoing, defendants discriminated against plaintiff on account of her disability by terminating plaintiff in violation of the NYCHRL§ 8-107.

61. The individual defendant participated in the discrimination; had the power to make personnel decisions; and aided and abetted the discrimination in violation of NYCHRL § 8-107 et seq.

62. As a result of defendants' willful, knowing, and intentional discrimination, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

### SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR DISCRIMINATION BASED ON GENDER UNDER THE NYCHRL

63. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

64. By reason of the foregoing, defendants discriminated against plaintiff on account of her gender by terminating her because she took disability leave, whereas they permitted a male employee to remain on disability leave for approximately one year, in violation of the NYCHRL§ 8-107.

65. The individual defendant participated in the discrimination; had the power to make personnel decisions; and aided and abetted the discrimination in violation of NYCHRL § 8-107 et seq.

66. As a result of defendants' willful, knowing, and intentional discrimination, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

### SEVENTH CLAIM FOR RELIEF AGAINST HUDSON
### FOR BREACH OF CONTRACT

67. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

68. Plaintiff requested to exercise her earned stock options on or about October 22, 2021.

69. Defendant falsely claimed no stock options were due, based on the false allegation that plaintiff had resigned from her position.

70. By reason of the foregoing, defendants failed to allow plaintiff to exercise earned stock options under the company's 2020 Stock Incentive Plan in violation of plan documents.

71. As a result of defendants' willful, knowing, and intentional breach of contract, plaintiff sustained substantial losses in earnings and future pecuniary losses and interest.

**WHEREFORE**, plaintiff respectfully request that the Court enter judgment in plaintiff's favor and against defendants, containing the following relief:

A. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

B. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

C. An award of damages for any and all other monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial, plus prejudgment interest;

D. An award of liquidated and punitive damages;

E. An award of costs that plaintiff has incurred in this action, as well as plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law; and

F. Such other and further relief as the Court may deem just and proper.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY
ON ALL CLAIMS FOR RELIEF**

Dated: New York, New York
   January 19, 2022

              MOSKOWITZ & BOOK, LLP

            By: _Chaim B. Book/ms_
              Chaim B. Book
              345 Seventh Avenue, 21st Floor
              New York, NY 10001
              Telephone: (212) 221-7999
              cbook@mb-llp.com
              *Attorneys for Plaintiff*