UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STARYL DESIDERIO,

                Plaintiff,

– against –

HUDSON TECHNOLOGIES, INC.
and BRIAN COLEMAN,

                Defendants.

**OPINION & ORDER**

22 Civ. 541 (ER)

RAMOS, D.J.:

      Staryl Desiderio brings this action for damages against Hudson Technologies, Inc. ("Hudson") and Brian Coleman for violation of the Family and Medical Leave Act ("FMLA"), disability and gender discrimination in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), and breach of contract. Doc. 5. Desiderio filed her complaint on January 21, 2022, alleging seven claims for relief. *Id.* On May 12, 2022, Defendants filed a motion to dismiss Counts One through Six pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Doc. 20. Defendants do not move to dismiss Count Seven, the breach of contract claim. *Id.* For the reasons set forth below, Defendants' motion to dismiss is GRANTED with respect to Counts, Two, Three, and Five, and DENIED with respect to Counts One, Four, and Six.

**I.    BACKGROUND**

      The Court accepts the following allegations as true for the purposes of this motion. Desiderio is currently a resident of Florida. Doc. 5 ¶ 4. Hudson hired Desiderio on October 10, 2017 after it acquired Airgas Refrigerants, Inc., Desiderio's former employer. *Id.* ¶ 8. While employed by Hudson, Desiderio worked at its office in Long Island City, New York, and also

remotely during the COVID-19 pandemic. *Id.* ¶ 9. On March 24, 2021, Brian Coleman, President and CEO of Hudson, promoted Desiderio from Vice President of Purchasing to Vice President of Supply Chain Management, reporting to Coleman. *Id.* ¶¶ 7, 11.

On June 4, 2021, Nicole Hagan, Human Resources Manager for Hudson, called Desiderio to inform her that a customer service manager under Desiderio's supervision had allegedly made inappropriate remarks to a co-worker about "naked yoga." *Id.* ¶ 14. The manager of the employee who made the comments called Desiderio later that day, expressing her opinion that the employee should be fired. *Id.* ¶ 15. That same day, Desiderio requested that Hagan do a full investigation of the complaint against the employee. *Id.* ¶ 16. The following day, on June 5, 2021, Hagan informed Desiderio that Hudson's attorneys had advised that the company could fire the employee or take other corrective action at its discretion. *Id.* ¶ 17. During that conversation, Desiderio suggested that they meet in person to decide whether to fire the employee. *Id.* On June 8, 2021, Desiderio met with Hagan at Hudson's office in Pearl River, New York to discuss the investigation and how to proceed. *Id.* ¶ 18. During this meeting, Hagan informed Desiderio that the employee had already been terminated at some point between June 5 and June 8, 2021 at Coleman's instructions. *Id.*

The next day, on June 9, 2021, Coleman called Desiderio into a conference room in the Long Island City office to question her about why she did not immediately fire the employee. *Id.* ¶ 19. Desiderio explained that she had requested a full investigation, but Coleman accused her of keeping the employee "just to make [her] job easier," despite "knowing that he was a predator." *Id.* Additionally, Coleman allegedly stood over Desiderio, angrily yelled at her, sat down and pointed his finger in her face, said "I want you to think about what you've done," and demanded that she apologize to everyone involved. *Id.* ¶¶ 19–20. Desiderio alleges that Coleman's

treatment of her was motivated by gender discrimination, since he did not treat the male employees in a similar way for personnel decisions. *Id.* ¶ 21.

In the weeks that followed this meeting with Coleman, Desiderio began suffering from, and was diagnosed with, panic attacks, anxiety, depression, and insomnia. *Id.* ¶¶ 22–23.  On July 18, 2021, Mike Desiderio, Desiderio's husband, emailed Coleman and Hagan that Desiderio required medical leave for her condition. *Id.* ¶ 24.  Desiderio completed medical/disability forms and sent them to Anthem's Life and Disability Claims Service Center on July 22, 2021. *Id.* ¶ 25.  Hagan acknowledged receipt of these forms the following day. *Id.* ¶ 26.

On August 11, 2021, Mr. Desiderio confirmed that Hudson had received the completed FMLA forms from his wife's doctor. *Id.* ¶ 27.  Mr. Desiderio followed up with Hagan multiple times in September to see if additional medical documentation was necessary, though neither he nor Desiderio's doctor received any additional forms to complete. *Id.* ¶ 28.  Hudson did not provide notice to Desiderio about whether her leave was approved or denied, or about an expiration date for FMLA leave. *Id.* ¶ 30.

During Desiderio's time off, Hudson paid her prorated sick days, vacation, personal days, and paid time off ("PTO"), but stopped paying once she exhausted her PTO on August 21, 2021. *Id.* ¶¶ 31–32.  Nearly two months later, on October 12, 2021, Mr. Desiderio emailed Coleman to let him know that his wife had a medical "setback," and to inquire about whether Hudson would be interested in offering severance, though neither of the Desiderios ever communicated that Desiderio was resigning.  *Id.* ¶ 33.  On October 22, 2021, Coleman emailed Mr. Desiderio with a severance offer, and that same day Mr. Desiderio stated that Desiderio wished to exercise her stock options. *Id.* ¶¶ 35–36.  On October 27, 2021, Coleman emailed Mr. Desiderio that, "[b]y failing to return to work upon expiration of her FMLA leave, [Desiderio] effectively resigned her

position at Hudson," and that her stock options were canceled due to the "voluntary termination." *Id.* ¶¶ 37–38. The period of time between Desiderio's email that she required medical leave—July 18, 2021—and her termination—October 27, 2021—was approximately three months.[1] *Id.* ¶¶ 24–26, 37. Desiderio states, upon information and belief, that a male, vice-president-level employee of Hudson was permitted by Defendants to remain on paid leave for approximately one year. *Id.* ¶ 39.

On January 21, 2022, Desiderio filed the instant complaint against Hudson and Coleman, alleging seven claims for relief. *Id.* at 1. Counts One and Two are against Hudson for violating the FMLA and for FMLA retaliation. *Id.* ¶¶ 45–52. Counts Three and Four are against both Defendants for discrimination based on gender and for discrimination based on disability under the NYSHRL. *Id.* ¶¶ 53–58. Similarly, Counts Five and Six are against both Defendants for discrimination based on gender and for discrimination based on disability under the NYCHRL. *Id.* ¶¶ 59–66. Count Seven, which is not at issue in this opinion, is against Hudson for breach of contract. *Id.* ¶¶ 67–71. On May 12, 2022, Defendants filed a motion to dismiss Counts One through Six pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Doc. 20.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is

---

[1] It is unclear from the complaint whether the FMLA leave period began on July 18 (the date Mr. Desiderio informed Hudson that Desiderio would be taking leave), July 22 (the date that she submitted the FMLA forms), July 23 (the date Hudson acknowledged receipt of the FMLA forms) or August 21, 2021 (the date Desiderio's PTO expired and Hudson stopped paying her any salary). Doc. 5 ¶¶ 24–26, 31–32, 37.

not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### III. DISCUSSION

#### A. FMLA Interference Claim

Count One of the complaint alleges that Hudson violated the FMLA by failing to provide Desiderio with required notices and by not offering to reinstate her upon completing her FMLA leave. Doc. 5 ¶¶ 45–49. To prove FMLA interference, a plaintiff must establish that the defendant "denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). The FMLA entitles eligible employees, like Desiderio, to take unpaid, job-protected leave in a defined 12-month period for specified family and medical reasons. 29 U.S.C. § 2612(a)(1). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Ejiogu v. Grand Manor Nursing and Rehab. Ctr.*, No. 15 Civ. 505 (DLC), 2017 WL 1184278, at *5 (S.D.N.Y. Mar. 29, 2017) (quoting *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004)). Therefore, a plaintiff must show: (1) she is an eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she gave notice to the defendant of her intention to take leave; and (5) she was denied benefits to which she was entitled under the FMLA. *Graziadio*, 817 F.3d at 424. Here, Defendants argue that the complaint fails to meet the fifth element because Desiderio does not purport to have been denied any of her rights under the FMLA. Doc. 21 at 6, 10.

An employer's failure to provide an employee with necessary information about its FMLA leave policies that affects the employee's ability exercise a substantive right provides a basis for an FMLA interference claim. *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016). The right to reinstatement, for example, is "a benefit at the crux of the FMLA's provisions." *Id.* However, "where the lack of notice [has] had no effect on the employee's exercise of or attempt to exercise any substantive right conferred by the Act," no

6

denial has occurred. *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 161–62 (2d Cir. 1999); *see also Ragsdale v. Wolverine World Wide, Inc*, 535 U.S. 81, 91 (2002) ("The purpose of the [FMLA interference] cause of action is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions."). In *Sarno*, the Second Circuit found that an employer's failure to provide an employee notice that he had exhausted his leave did *not* impede the employee's right to reinstatement because he was unable to return to work at the time his leave ran out. *Sarno*, 183 F.3d at 161–62 ("[The plaintiff-employee's] right to reinstatement could not have been impeded or affected by the lack of notice because his leave was caused by a serious health condition that made him unable to perform the functions of his position, and it is undisputed that that inability continued for some two months after the end of his 12-week FMLA period.") (internal quotation marks and citations omitted). However, "where an employee uses leave which might be counted as vacation time, FMLA leave, or both, an employer's failure to provide notice that the leave counts against the FMLA allotment might interfere with the employee's ability to plan and use future FMLA leave to, for example, schedule elective surgery[.]" *Fernandez*, 159 F. at 363 (internal quotation marks and citation omitted).

  Here, the complaint alleges that Hudson paid Desiderio her prorated sick days, vacation days, personal days, and PTO between approximately July 18, 2021—when Mr. Desiderio informed Hudson that his wife was unable to work—and August 21, 2021. *See* Doc. 5 ¶¶ 24–6, 31–32. On August 21, 2021, Hudson stopped paying Desiderio any salary because she had exhausted her PTO. *Id.* ¶ 31. At that point, Desiderio's employment nonetheless *continued*. She did not resign, and Hudson did not yet terminate her. *Id.* ¶ 34. Approximately seven weeks later, on October 12, 2021, Mr. Desiderio informed Mr. Coleman by email that his wife had a

"set back," with her medical condition and asked whether Hudson would offer her severance. *Id.* ¶ 33. On October 22, 2021, Coleman made an offer of severance in an email to Mr. Desiderio. That same day, Mr. Desiderio responded that his wife wished to exercise her stock options. *Id.* ¶¶ 35–36. On October 27, 2021—approximately nine-and-a-half weeks from the date Desiderio depleted her PTO—Hudson advised Desiderio in an email to Mr. Desiderio that her FMLA leave had expired and that, by consequence, she had voluntarily terminated her employment and could not exercise her stock options. *Id.* ¶¶ 37–38.

Defendants argue that like in *Sarno*, Hudson's failure to provide notice did not substantively affect Desiderio's right to FMLA leave, since Desiderio was unable to return to work after her 12 weeks of FMLA had expired. The Court disagrees for the following reasons. First, had Hudson provided Desiderio notice of when it intended to commence her 12-week FMLA leave period, Desiderio may have been able to structure her FMLA leave so that it did not run concurrently with her PTO. *See Fernandez*, 159 F. at 363. The complaint alleges that Hudson paid Desiderio until August 21, 2021, at which time she had exhausted her vacation days, personal days, sick days, and other PTO. The 12-weeks of FMLA leave is *unpaid*. Accepting the complaint as true, to justify terminating Desiderio on October 22, 2021, Hudson must have started Desiderio's FMLA leave at least 12 weeks prior. Twelve weeks prior to October 22, 2021 is July 30, 2021. On that date, Desiderio was *also* using her PTO. Had notice been provided, Desiderio could have avoided this overlap and initiated her FMLA period on August 21, 2021, the date her PTO expired. Desiderio could have thereby extended her time off until mid-November 2021. Construing the complaint in the light most favorable to Desiderio, it is not necessarily true that she would not have been able to return to work in mid-November, more than a month after the October 12, 2021 email from Mr. Desiderio to Coleman, describing

his wife's medical setback.  Accordingly, the Court finds that Desiderio has adequately pleaded a claim for FLSA interference.

### B.  FMLA Retaliation Claim

Count Two alleges that Hudson terminated Desiderio's employment in retaliation for her requesting FMLA leave.  Doc. 5 ¶¶ 50–52.  To state a claim for FMLA retaliation, Desiderio must allege that:  (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).  Defendants argue that Desiderio's FMLA retaliation claim is based entirely on conclusory allegations and lacks the required inference of retaliatory intent.  Doc. 21 at 14–15.

Retaliatory intent may be shown through a variety of means.  *See, e.g.*, *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987).  When alleged retaliation occurs in close temporal proximity to an employee's exercising of federally protected employment rights, courts have inferred a retaliatory intent in satisfaction of that pleading requirement.  *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).  To state a claim for retaliation under the FMLA, a plaintiff need only plead facts sufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, Desiderio does not plausibly allege that Defendants terminated her in retaliation for exercising her FMLA leave because Hudson did not inform her of her "voluntary termination" until *after* the date that Hudson believed that she had exhausted her leave.  If an employee has not returned to work at the end of the FMLA leave, "the employer can replace the employee, as

9

long as the employer is not doing so to punish the employee for exercising her FMLA rights." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 534 (S.D.N.Y. 2009).  Additionally, the duration of time between her exercising her FMLA leave and her termination was not particularly short, at approximately three months.  "In the absence of any further evidence suggesting retaliation, months of separation between protected activity and alleged retaliation cannot be considered very close."  *Miller v. McHugh*, 814 F. Supp. 2d 299, 321 (S.D.N.Y. 2011) (finding temporal proximity of five months insufficient to establish a causal connection); *see also Harrisman v. City of New York Dep't of Transporation*, No. 19 Civ. 2986 (JMF), 2020 WL 5211043, at *5 (S.D.N.Y. Sept. 1, 2020) (same for a period of three to four months).  Other than Desiderio's claim that the temporal proximity between the FMLA leave and the termination demonstrates retaliatory intent, the retaliation allegations in the complaint are conclusory.  Thus, the facts surrounding Desiderio's termination do not give rise to an inference of retaliatory intent, and as such, the FMLA retaliation claim is dismissed.

### C. State Law Discrimination Claims

Count Three alleges that Defendants terminated her employment because of her disability, in violation of the NYSHRL.  Doc. 5 ¶¶ 53–55.  Count Four alleges that Defendants violated the NYSHRL by discriminating against her on account of her gender.  *Id.* ¶¶ 56–58.  Similarly, Counts Five and Six allege disability and gender discrimination, respectively, by Defendants in violation of the NYCHRL.[2]  *Id.* ¶¶ 59–66.  In support of Counts Four and Six for gender discrimination, Desiderio primarily points to the contrast in how Defendants permitted a male employee to remain on disability leave for approximately one year, while she was

---

[2] The complaint specifically alleges discrimination by Hudson, and not by Coleman, for Counts Three and Five. However, the headers for Counts Three and Five state that the claims are against "all Defendants."  Thus, the Court interprets these claims as being brought against both Defendants.  Doc. 5 ¶¶ 53–55, 59–62.

10

permitted to take leave for 12 weeks. *Id.* ¶¶ 57, 64. As part of both Counts Five and Six, Desiderio also claims that Coleman participated in gender discrimination, had the power to make personnel decisions, and aided and abetted the discrimination in violation of the NYCHRL. *Id.* ¶¶ 61, 65.

Defendants assert that Desiderio cannot state claims pursuant to either the NYSHRL or NYCHRL because the complaint alleges that at the time of her allegedly unlawful termination, Desiderio was living and working remotely in Florida. Doc. 21 at 6, 15–19. Defendants also argue that the complaint does not allege facts allowing for the conclusion that Desiderio was subjected to an adverse employment action on account of her gender or disability. *Id.*

Non-residents who work in New York City may state claims pursuant to the NYSHRL and the NYCHRL. *See Hoffman v. Parade Publications*, 933 N.E.2d 744, 746–47 (N.Y. 2010); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013). To state a claim under either the NYSHRL or NYCHRL, a non-resident plaintiff must allege that the impact of the discriminatory conduct was felt in New York or New York City, respectively. *See Shiber v. Centerview Partners LLC*, 21 Civ. 3649 (ER), 2022 WL 1193433, at *4 (S.D.N.Y. Apr. 20, 2022). It matters not where the conduct originated. *Id.* at *4 (citing *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016)). This requirement applies even to employees working remotely, out-of-state for a New York employer; the fact that an allegedly unlawful decision terminating a plaintiff's employment occurred in New York is insufficient to plead impact in New York. *See Pakniat v. Moor*, 145 N.Y.S.3d 30, 31 (N.Y. App. Div. 2021).

Desiderio alleges that she, like other Hudson employees, worked remotely during the COVID-19 pandemic, but describes two meetings that took place in New York State, with one being in New York City. Doc. 5 ¶¶ 18–19. Those meetings include the June 8, 2021 meeting in

11

Pearl River, and the June 9, 2021 meeting in Long Island City, which is in New York City. *Id.* As detailed in the complaint, Desiderio does not allege any discriminatory treatment by Hagan in Pearl River, and thus that meeting is not relevant to Desiderio's claims of discrimination. Regarding the Long Island City meeting, Desiderio alleges harsh treatment at the hands of Coleman, which she describes as motivated by gender discrimination. *Id.* ¶ 21. That is, she alleges Coleman stood over her, angrily and condescendingly berated her, and demanded that she apologize to other employees. *Id.* ¶ 19–20. The complaint also alleges that Desiderio suffered from medical conditions in the weeks following the meeting. *Id.* ¶ 22.

Defendants argue that the impact of the alleged discriminatory conduct did not occur in New York because her panic attacks, anxiety, depression, and insomnia did not begin until after she returned to Florida.[3] *Id.* ¶¶ 22–23. In support of that argument, Defendants cite the proposition set forth in *Meilus v. Restaurant Opportunities Center United, Inc.*, that "impact is not measured by where the discriminatory acts took place." No. 21 Civ. 2554 (CM), 2021 WL 4868557, at *11 (S.D.N.Y. Oct. 15, 2021). The facts of that case, however, are not analogous.

There, an out-of-state employee brought a race-based discrimination claim against her New York-headquartered employer pursuant to the NYSHRL. *Id.* at *9. In support of her claims, the plaintiff alleged that she attended events in New York at which discriminatory acts occurred. *Id.* at *11. In reviewing the defendant-employer's motion to dismiss, the *Meilus* court explained that the issue in evaluating whether or not to dismiss the claims was not whether they stemmed from New York-based discriminatory conduct, but whether the impact of the contested employment action was felt by plaintiff in New York. *Id.* at *10 (citing *Vangas v. Montefiore*

---

[3] The complaint does not plead when Desiderio returned to Florida. However, the opposition to Defendants' motion to dismiss does not resist Defendants' suggestion that Desiderio experienced medical issues resulting from the meeting in Florida.

12

*Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016)).  The court concluded that the complaint did "not make clear whether any of the incidents on which [she] base[d] her claims took place while she was in New York," and therefore dismissed the action.  *Id.* at *11.  The court, however, made clear that other courts have found that to the degree incidents of harassment or retaliation occur while a plaintiff is in New York City and among those who work in the city, there is no reason those claims cannot proceed.  *Id.* (citing *Kraiem v. JonesTrading Institutional Services LLC*, 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020)); *see also Hoffman v. Parade Publications*, 933 N.E.2d 744, 747 (N.Y. 2010).[4]

Unlike *Meilus* and *Shiber*, here, Desiderio alleges that she *did* attend a meeting at her employer's New York City office at which she experienced gender-based discriminatory treatment.  Doc. 5 ¶¶ 19–21.  "[C]ourts have consistently emphasized that the location of the impact of the offensive conduct is the location where the plaintiff feels the impact of a violation of the NYCHRL on his or her employment."  *Anderson v. HotelsAB, LLC*, No. 15 Civ. 712 (LTS) (JLC), 2015 WL 5008771, at *3 (S.D.N.Y. Aug. 24, 2015) (further noting that impact analysis under these statutes calls for a "practical substantive consideration of how and where the injury actually affected the plaintiff with respect to her employment.").  The Long Island City meeting is sufficient for NYCHRL and NYSHRL purposes because it is not simply the location where the discriminatory act took place, but also where Desiderio alleges that she felt the impact of the discriminatory conduct.  Accordingly, Defendants' motion to dismiss Counts Four and Six is denied.

---

[4] Defendants also rely on *Shiber v. Centerview Partners LLC*, No. 21 Civ. 3649 (ER), 2022 WL 1173433 (S.D.N.Y. Apr. 20, 2022.  But there, the plaintiff-employee could not have experienced any impact in New York, since she "she never stepped foot inside [her employer's] New York City office and instead worked exclusively from her home in New Jersey."  *Id.* at *2.

However, the complaint does not allege facts supporting a disability discrimination claim under the NYCHRL or the NYSHRL, as Desiderio does not allege that she ever felt the impact of disability discrimination in New York. Indeed, there is no support for the claim that Desiderio was discriminated against on account of her disability at either of the New York meetings, as those meetings took place before Desiderio's medical conditions began. *Id.* ¶¶ 18–19, 22–23. Accordingly, Counts Three and Five are dismissed.

### IV.     LEAVE TO AMEND

To the extent that this Court considers Desiderio's allegations to be insufficient to support her claims, Desiderio requests leave to amend her complaint. Doc. 22 at 11, 20. As a general rule, leave to amend a complaint should be freely granted. *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). District courts have broad discretion in deciding whether to grant leave to amend. *Pasternack v. Laboratory Corp. of Am.*, 892 F. Supp. 2d 540, 548–49 (S.D.N.Y. 2012). A court should allow leave to amend a pleading unless the non-moving party can establish prejudice or bad faith. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010).

Denying leave to amend is proper where the amendment would be futile, would result in undue prejudice to the opposing party, or would be made in bad faith. *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009). An amendment is considered futile where the plaintiff is unable to demonstrate that she would be able to cure the defects in a manner that would survive a motion to dismiss. *Hayden v. County of Nassau*, 180 F.3d 42, 53–54 (2d Cir. 1999). Given that this would be Desiderio's first time amending the complaint, and the possibility that this leave would allow Desiderio to assert additional facts to fully state her claims, the Court cannot conclude that amendment would be futile. Therefore, Counts Two, Three, and Five will be

dismissed without prejudice. The Court directs Desiderio to submit an amended complaint, if at all, by no later than February 3, 2023.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED with respect to Counts Two, Three, and Five, and DENIED with respect to Counts One, Four, and Six. Desiderio must file her amended complaint, if at all, by February 3, 2023. The Clerk of Court is respectfully directed to terminate the motion, Doc. 20.

SO ORDERED.

Dated:   January 13, 2023
         New York, New York

_____
Edgardo Ramos, U.S.D.J.