UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STARYL DESIDERIO,

                                    Plaintiff,

            – against –

HUDSON TECHNOLOGIES, INC. and
BRIAN COLEMAN,

                                    Defendants.

**OPINION & ORDER**

22-cv-00541 (ER)

Ramos, D.J.:

On September 3, 2024 the Court denied in part and granted in part a motion for summary judgment filed by Hudson Technologies, Inc. ("Hudson") and Brian Coleman (together, "Defendants"). Doc. 68. Before the Court is Defendants' motion for reconsideration with respect to the Court's denial of summary judgment on the gender-based discrimination claims under Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Doc. 71. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

The Court assumes familiarity with the underlying facts, which are described in detail in the Court's prior opinions. *See generally Desiderio v. Hudson Technologies, Inc.*, No. 22-cv-00541 (ER), 2024 WL 4026260 (S.D.N.Y. Sept. 3, 2024) (granting and denying in part Defendants' motion for summary judgement); *Desiderio v. Hudson Technologies, Inc.*, No. 22-cv-00541 (ER), 2023 WL 185497 (S.D.N.Y. Jan. 13, 2023) (granting and denying in part Defendants' motion to dismiss). The Court repeats the relevant background here for convenience.

### A. Factual Background

Staryl Desiderio is a Florida resident. Doc. 44 ¶ 4. Desiderio's employment with Hudson Technologies, Inc. ("Hudson") began October 10, 2017 after Hudson acquired

her former employer, Airgas Refrigerants, Inc. ("Airgas").  Doc. 63 ¶ 1.  A few months after the acquisition, Desiderio was promoted to Vice President of Purchasing.  *Id.*  On March 24, 2021, Coleman promoted Desiderio to Vice President of Supply Chain Management, which included expanded responsibilities and required her to report to Coleman, Hudson's President and Chief Executive Officer.  *Id.* ¶ 2; Doc. 44 ¶ 11. Desiderio alleges that she worked at the Long Island City office, however, like other employees, she worked remotely during the COVID-19 pandemic.  Doc. 44 ¶ 9.

On June 4, 2021, two subordinates of Desiderio reported to Hudson's Human Resources Manager, Nicole Hagan, that another employee had made sexually inappropriate comments.  Doc. 63 ¶ 3.  Hagan informed Desiderio of the complaint, to which Desiderio instructed Hagan to investigate further.  *Id.* ¶ 4.

On June 8, 2021, Desiderio alerted Coleman to the incidents.  *Id.* ¶ 6.  However, Coleman asserts that he did not learn the full extent of the charges until speaking with Hagan later that day.  Doc. 55 ¶ 8.  Coleman also learned from Hagan that, despite the allegations, Desiderio still wanted to retain the employee accused of making the inappropriate comments.  *Id.* ¶ 9.  According to Desiderio, however, because the investigation was still ongoing, she did not have all the facts at the time she met with Coleman.  Doc. 63 ¶ 8.

The following day, June 9, 2021, Coleman brought Desiderio in for a meeting at Hudson's Long Island City office (the "Long Island City meeting").  Docs. 55 ¶ 11; 44 ¶ 19.  During the meeting, Coleman raised his voice in what he characterized as frustration with Desiderio's lapse of judgement.  Doc. 55 ¶ 11.  According to Desiderio, she was "terrified" by Coleman who was "yelling at [her] . . . completely intimidat[ing her] . . . [s]tanding over [her]," and "treat[ing her] like . . . a child."  Doc. 62-1 at 32–34. Desiderio stated that she left the meeting "terrified, shaking, hysterical [sic] crying."  *Id.* at 35.

The next day Coleman sent an email to members of Hudson's leadership, which did not mention Desiderio by name but clearly referred to her, stating that "a management-level employee had taken actions that violated our Company's anti-harassment policy," and that he "will not tolerate members of our leadership team who . . . turn a blind eye to such behavior rather than addressing, and remediating, it immediately."  Docs. 63 ¶ 12; 61 at 13; 62-10 at 1.

Coleman also sent an email to Desiderio criticizing her handling of the situation and imposing a three-step action plan requiring Desiderio to:  (1) re-take the anti-harassment manager training; (2) participate in a manager training course; and (3) update her 2021 goals to include behavioral metrics toward improving her managerial skills.  Docs. 63 ¶ 13; 54-6 at 6.  Coleman also informed Desiderio that he would be asking her team for feedback regarding her management skills, and would therefore be conducting a 360-manager review survey.  *Id.*

Also in June 2021, Desiderio asserts that Coleman blamed inventory shortages on Desiderio's managerial failures.  Doc. 63 ¶ 18.  According to Desiderio, there was a significant worldwide shortage of refrigerants at the time resulting in price hikes and depletion, and Coleman later determined that Hudson's inventory shortages were due to its limited space and inventory tracking problems.  Docs. 63 ¶ 18; 54-6 at 11; 61 at 13.

Shortly after the Long Island City meeting, Desiderio began experiencing anxiety, depression, panic attacks, and insomnia.  Docs. 63 ¶ 19; 44 ¶ 22.  On July 14, 2021, Desiderio's husband texted Coleman stating that he would be taking Desiderio to the hospital the next morning.  Doc. 63 ¶ 19; 54-6 at 18.  Mr. Desiderio texted Coleman with an update the following day, reporting that "she [was] physically and emotionally exhausted, and was headed toward a complete breakdown."  Docs. 63 ¶ 20; 54-6 at 19.  On July 16, 2021, Mr. Desiderio informed Coleman that Desiderio was ill and needed to take sick leave.  Doc. 63 ¶ 21.

On July 18, 2021, Mr. Desiderio sent Coleman an email which included an attached note from the hospital instructing that Desiderio remain away from work until she obtained approval to return by a psychiatrist. *Id.* ¶ 22; Doc. 54-6 at 25–26. Mr. Desiderio also reported that Desiderio would be undergoing therapy and asked Coleman to send any other forms that were required for leave purposes. Docs. 63 ¶ 22; 54-6 at 25.

The next day, Coleman shared his and Hagan's cell phone numbers with Mr. Desiderio. Doc. 63 ¶ 22. Hagan then emailed Mr. Desiderio the FMLA leave forms, which Desiderio submitted on August 5, 2021. *Id.* ¶ 23, 24. According to Hudson, due to an oversight, Hagan never informed Desiderio that her FMLA leave had been approved, or when it was set to expire. Docs. 54-4 at 19–20; 55 ¶ 25; 62-3 at 22–23; 63 ¶ 25.

On September 30, 2021, Mr. Desiderio emailed Coleman again, advising him that he was "told by her current therapist that the thought of returning to work with [Coleman] terrifies her," expressing uncertainty that the situation would improve, and that the therapist could not predict a return date. Docs. 63 ¶ 26; 54-6 at 35. The email went on to say: "Under the circumstances, do you think it is best for her to cut ties with the company? If so, I'm asking that you put together a severance package for her. Keep in mind that she has already had to burn up her unused sick and vacation time, as well as bearing the burden of uncovered medical costs for past and future treatment." *Id.*[1] Mr. Desiderio also reminded Coleman in his email that Desiderio's "40-year career [had been] destroyed in less than a month" and expressed "hope [that he] will do right by her now." *Id.* When asked in her deposition if she thought that she could have returned to work by July 2022, Desiderio responded, "I don't believe so, no." Doc. 54-1 at 72. She also expressed that she did not become able, "from a physical and mental standpoint," to return to work until 2023. *Id.* at 65.

---

[1] Desiderio alleges that she was unaware at the time that her husband had inquired about a severance package. Doc. 63 ¶ 31.

On October 22, 2021, Coleman responded, saying that "we would be willing to provide a three-month severance package.  Naturally, the severance benefits would be contingent on [Desiderio's] execution of a separation agreement including a general release, and other standard provisions."  Doc. 62-12 at 1.  The same day, Mr. Desiderio emailed another Hudson employee, Nat Krishnamurti, requesting to exercise Desiderio's 23,810 stock options.  Doc. 62-13 at 1; 63 ¶ 28.  The stock options were issued pursuant to a stock option agreement and governed by the terms and conditions set forth in the 2014 Stock Incentive Plan.  Docs. 63 ¶ 29; 54-6 at 37–40; 62-13 at 1.

On October 27, 2021, Coleman responded to Desiderio's request to exercise the stock options, explaining that under the 2014 Stock Incentive Plan, a participant who voluntarily terminates employment forfeits all options and that "[b]y failing to return to work upon expiration of her FMLA leave, [Desiderio] effectively resigned her position at Hudson Technologies."  Docs. 63 ¶ 31; 55 ¶ 31; 62-13 at 2.  Coleman explained that Desiderio's intent to terminate her employment relationship with Hudson is "quite clear from the fact that she has requested a severance package.  As a consequence of [her] resignation[,] all her remaining options were cancelled and therefore can no longer be exercised."  Docs. 62-13 at 2; 63 ¶ 31.  However, Desiderio asserts that because she was on FMLA leave at the time the request to exercise the stock options was made, she still qualified under the 2014 Incentive Plan.[2]  Doc. 63 ¶ 31.

Desiderio also asserts that she was treated differently from Chuck Harkins, who Desiderio alleges is materially similarly situated and a proper comparator for her discrimination claims.  Doc. 61 at 15–16.  According to Desiderio, she replaced Harkins

---

[2] The 2014 Incentive plan provides that:  "all exercisable Stock Options held by the participant on the date of the participant's death or *the date of the termination of his or her employment due to disability*, as the case may be, shall remain exercisable until the earlier of (i) the end of the one-year period following the date of the participant's death or the date of the termination of his or her employment due to disability, as the case may be, or (ii) the date the Stock Option would otherwise expire[.]"  Doc. 54-7 at 68 (emphasis added).

as Vice President of Purchasing in June 2018 after he was diagnosed with ALS. Docs. 61 at 1; 62-1 at 2–4; 63 ¶ 33. However, Hudson asserts that Harkins was the Vice President of Sales & Marketing and never held the position of Vice President of Purchasing. Doc. 66 ¶ 2. Defendants also assert that Harkins was a member of a select group of executive officers of its parent company, who, in October of 2006, negotiated a severance agreement (the "2006 Agreement") which provided for, *inter alia*, 18 months of severance pay and other benefits in the event of a disability in exchange for accepting a reduced compensation package. Doc. 66 at 1. Defendants maintain that this severance agreement governed Harkins' 2018 severance letter and corresponding benefits when he became disabled. Docs. 62-17; 64 at 8 n.2. According to Defendants, Desiderio only became a Hudson employee in October of 2017, when it acquired Airgas, and thus Desiderio—like all other Airgas employees—was not a party to the pre-existing executive severance agreement. Docs. 66 ¶ 3; 55 ¶ 34.

However, Desiderio asserts that the 2006 Agreement referenced by Defendants "was not in effect in 2018." Doc. 63 ¶ 33. For support, Desiderio points to the fact that Harkins' severance letter, dated May 18, 2018, makes no reference to the 2006 Agreement, and contains terms significantly different from the 2006 Agreement, which was amended in 2008. *Id.* For example, in the severance letter, Hudson provided Harkins with 120 days of paid sick leave at his full former salary, a full year bonus based upon his 2016 bonus of $280,000, stock options valued at $302,000, continuation of employer-paid medical and other benefits, and a milestone bonus in the event that Hudson subsequently completed a transaction that was then pending with Honeywell. *Id.*; Doc. 62-17. Meanwhile, the 2006 Agreement provided for the continuation of Harkin's full salary for the first eight weeks of his disability leave, however, if the leave exceeded eight weeks Hudson's obligation to continue payment of Harkins' salary would be reduced to 75%. Doc. 54-8 at 14–15. Moreover, according to Desiderio, the 2006

Agreement made no mention of a transaction with Honeywell.  Docs. 63 ¶ 33; 54-8 at 2–17.

### B.  Procedural Background

Desiderio filed the initial complaint on January 21, 2022, alleging seven claims for relief.  Doc. 5.  On May 12, 2022, Defendants filed a motion dismiss, seeking to dismiss the first six counts for failure to state a claim.[3]  Doc. 20.  On January 13, 2023, the Court granted the motion on Counts Two, Three and Five, and denied on Counts One, Four, and Six.  Doc. 33.

Defendants filed their answer to the initial complaint on March 23, 2023, Doc. 37, and on June 22, 2023, Desiderio filed an amended complaint.[4]  Doc. 44.  The answer to the amended complaint was filed on July 5, 2023.  Doc. 46.

Defendants filed a motion for summary judgment on September 29, 2023.  Doc. 52.  On September 3, 2024, the Court granted Defendants' motion with respect to Counts One, Two, Three, and Five, and denied with respect to Counts Four, Six, Seven, and Eight.  Doc. 68.  On September 16, 2024, Defendants filed the instant motion for reconsideration of the Court's denial of their motion for summary judgement on Counts Four, Six, and Eight.  Doc. 71.

## II.  LEGAL STANDARD

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Surveys, Inc. v. Tonga Partners,*

---

[3] In the initial complaint, Desiderio brought claims against Defendants, alleging (1) interference with, and retaliation for exercising leave rights under the FMLA (Counts One and Two); (2) disability and gender discrimination in violation of NYSHRL (Counts Three and Four) and the NYCHRL (Counts Five and Six); and (3) breach of contract (Count Seven).  Doc. 5.  Count Seven was not at issue in the motion to dismiss. Doc. 20.

[4] In the amended complaint, Desiderio brought claims alleging (1) interference with, and retaliation for exercising leave rights under the FMLA (Counts One and Two); (2) disability discrimination and failure to accommodate in violation of the ADAAA (Counts Three and Five); (3) gender discrimination in violation of the NYSHRL (Count Four), the NYCHRL (Count Six), and Title VII (Count Eight); and (4) breach of contract (Count Seven).  Doc. 44.

*L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (internal quotation marks omitted) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

## III.   DISCUSSION

Defendants raise two grounds for reconsideration. They argue that (1) the recent Second Circuit decision in *Bart v. Golub Corp.*, 96 F.4th 566 (2d Cir. 2024), issued on March 26, 2024, clarified the standard for Title VII discrimination claims and that reconsideration is appropriate in light of that decision because it demands a different conclusion; and (2) that because the Court determined in its summary judgement opinion that the Long Island City meeting was not an adverse employment action, the only remaining adverse employment action is based on Desiderio's alleged termination, and because she was a Florida resident at the time of her termination she cannot avail herself of the NYCHRL or NYSHRL. *See* Doc. 72. The Court addresses each argument in turn.

### A.   Title VII Discriminatory Termination

Desiderio's gender discrimination claims are properly analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Asiedu v. Broadreach Medical Resources*, 19-cv-11825 (ER), 2022 WL 4237077, at *9 (S.D.N.Y. Sept. 13, 2022). A plaintiff's first step under *McDonnell Douglas* is to establish a *prima facie* case of discrimination.

*Banks v. General Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023) (quoting *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000)). The burden at this stage "is not onerous." *Id.* (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its adverse action. *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *McDonnell Douglas*, 411 U.S. at 802). Upon that showing, the burden then shifts back to the plaintiff to prove that the employer's stated reason was pretext for discrimination. *Id.*; *Banks*, 81 F.4th at 270–71.

In its summary judgement order, the Court found that with respect to the gender-based discriminatory termination claims, Desiderio set forth sufficient evidence to withstand a motion for summary judgement under the *McDonell Douglas* burden shifting framework. *Desiderio*, 2024 WL 4026260, at *13.

Defendants argue, however, that in light of the Second Circuit's decision in *Bart v. Golub Corp.*, 96 F.4th 566 (2d Cir. 2024), the Court improperly addressed the third-stage of *McDonell Douglas* where it is the plaintiff's burden to show that the employer's stated reason for the adverse employment action is pretext for discrimination. *See* Doc. 72 at 3. To be sure, Defendants do not argue that *Bart* is a change in controlling law, but rather that *Bart* "illustrates why it was 'clear error' to keep [Desiderio's] gender discrimination claims alive." Doc. 74 at 2. The Court disagrees.

In *Bart* the Second Circuit explicitly stated that its "holding . . . is not new," and clarified that "[t]o satisfy the third-stage burden under *McDonnell Douglas* and survive summary judgment in a Title VII disparate treatment case, a plaintiff may, but need not, show that the employer's stated reason was false, and merely a pretext for discrimination; a plaintiff may also satisfy this burden by producing other evidence indicating that the employer's adverse action was motivated at least in part by the plaintiff's membership in a protected class." *Bart*, 96 F.4th at 576, 578.

Nonetheless, Defendants argue that *Bart* "makes crystal clear" that a pretextual reason for termination alone does not show "pretext *for discrimination*" and that the Court's opinion identifies no record evidence showing discriminatory motive by Defendants. *Id.* at 576 (emphasis added); Doc. 72 at 3. Specifically, Defendants argue that the Court's finding that a reasonable jury could conclude that Defendants' proffered non-discriminatory reason for Desiderio's termination—that it believed Desiderio voluntarily resigned—was pretext, is insufficient because the falsity of Defendants' explanation has nothing to with Desiderio's gender and thus is not pretext *for discrimination*. But this conclusion finds no support in the text of *Bart*, nor subsequent case law cited by Defendants, and instead amounts to a mere disagreement with the Court's conclusion that Desiderio has proffered sufficient evidence of discrimination to withstand a motion for summary judgement.

Defendants point to *Luo v. AIK Renovation Inc.*, No. 23-cv-5878 (LJL), 2024 WL 4444283 (S.D.N.Y. Oct. 8, 2024) as an example of a post-*Bart* decision explaining the impact of a pretext finding at the summary judgement stage. Doc. 74 at 3–4. Although *Luo* postdates *Bart*, the opinion does not cite to it for the proposition that evidence of pretext is insufficient for a plaintiff to rebut a defendant's proffered non-discriminatory reason. Rather, Defendants quote a portion of *Luo* which discusses *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), where the Supreme Court considered whether evidence that the defendant's stated reason for the adverse employment action was pretextual in addition to *prima facie* evidence of discrimination could be sufficient to sustain a claim of intentional discrimination, or whether something more was required. *See* Doc. 74 at 3–4; *Luo*, 2024 WL 4444283, at *9. The Supreme Court explained that it depends. *Luo*, 2024 WL 4444283, at *9 (citing *Reeves*, 530 U.S. at 147).

"In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . . Moreover, once the employer's justification has been eliminated,

discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Reeves*, 530 U.S. at 147 (citation omitted); *see also Luo*, 2024 WL 4444283, at *9.

However, evidence of pretext does not necessarily demand a conclusion of discrimination in every situation. *Reeves*, 530 U.S. at 148. Instead, whether summary judgement is appropriate in a particular case "will depend on a number of factors . . . includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Reeves*, 530 U.S. at 148 ("For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."); *see also Luo*, 2024 WL 4444283, at *12 ("Courts have permitted cases to survive summary judgement and to go forward where, as here, the evidence of discriminatory intent is not particularly strong, but the evidence of pretext is strong.").

Moreover, in *Bart* itself the Court recognized that "'[t]hough the plaintiff's ultimate burden may be carried by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, it may often be carried by reliance on the evidence comprising the prima facie case, without more,' if that evidence is independently sufficient under step three of *McDonnell Douglas*." *Bart*, 96 F.4th at 576 (quoting *Cronin v. Aetna Life Insurance Company*, 46 F.3d 196, 203 (2d Cir. 1995)). In such cases, "the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial," which precludes summary judgment. *Id.* Indeed, the holding in *Bart* "is not new" and in no way undermines "the Supreme Court's

decision in *Reeves* [which] clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Luo*, 2024 WL 4444283, at *9 (internal quotation marks omitted) (quoting *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000)).

Here, citing *Reeves*, the Court explained that "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Desiderio*, 2024 WL 4026260, at *13 (quoting *Clawson v. City of Albany Department of Fire & Emergency*, No. 23-482, 2024 WL 1044531, at *1 (2d Cir. Mar. 11, 2024)); *id.* ("The Supreme Court has held that 'it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.'" (quoting *Reeves*, 530 U.S. at 147)). The Court then addressed the evidence which it concluded could allow a reasonable jury to conclude that Defendants' proffered non-discriminatory reason for Desiderio's termination was pretext for discrimination. *Desiderio*, 2024 WL 4026260, at *13. Specifically, the Court explained that a reasonable jury could conclude that Coleman did not actually believe Desiderio had voluntarily resigned given that Coleman claimed in his email declining to exercise her stock options that Desiderio had voluntarily resigned by failing to return to work upon the expiration of her FMLA leave despite the fact that Hudson never communicated a return date to Desiderio. *Id.* Moreover, the Court also noted that the fact that Mr. Desiderio and Coleman were still negotiating the terms of Desiderio's resignation was further evidence that Coleman did not believe that Desiderio had voluntarily resigned yet. *Id.* Defendants offer nothing new to suggest that this evidence is insufficient for the Court to find the proffered explanation to be pretextual.

Although the Court did not explicitly state as much, the strength of the evidence of pretext combined with plaintiff's *prima facie* case of discrimination sufficiently

permits the Court to infer that gender was a determinative factor in Desiderio's termination. *Id.* (explaining that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated" (quoting *Reeves*, 530 U.S. at 147)). Accordingly, this Court's determination that Desiderio set forth sufficient evidence of discrimination is entirely consistent with the applicable legal framework.

Defendants also challenge the sufficiency of Desiderio's *prima facie* case of discrimination, arguing that Harkins is not a materially similarly situated proper comparator. Doc. 72 at 4–7. Again, this argument amounts to mere disagreement with the Court and a rehashing of arguments that have already been made. The Court explained that there was evidence supporting Desiderio's claims that they held the same job title, had an overlap in responsibilities, and both reported to Coleman. *Desiderio*, 2024 WL 4026260, at *13. Moreover, although they both required medical leave, Harkins was provided with 120 days of paid sick leave, 18 months in severance at his full former salary, and other benefits, meanwhile Desiderio was denied continuation of her salary, denied disability benefits, and was ultimately terminated. *Id.*[5]

Defendants also argue that the disparity in treatment between Harkins and Desiderio with respect to their disability benefits is insufficient to show that Desiderio was subject to disparate treatment in her termination. Doc. 72 at 7–8. However,

---

[5] Defendants make the same arguments it raised on summary judgement that Harkins' disability benefits were awarded pursuant to a 2006 Agreement which Desiderio was not a party to, and that Desiderio and Harkins did not hold the same position of Vice President of Purchasing. However, the Court already determined that there are material disputes of fact with respect to both claims. *See Desiderio*, 2024 WL 4026260, at *12 n.14. The Court previously noted that Harkins' 2018 severance letter only refers to "a severance agreement," and therefore a reasonable jury could find that agreement was not, in fact, the 2006 Agreement Defendants cite. *Id.* (citing Doc. 63 ¶ 33). Moreover, the terms of the 2018 severance letter differ from the 2006 Agreement. *Id.*; *see also* Doc. 54-8 at 14–15. The Court also explained that even though Coleman's December 13, 2023, declaration states that Harkins had been the Vice President of Sales & Marketing and not the Vice President of Purchasing, in both his July 14, 2023, deposition and Defendants' own 56.1 statement of undisputed facts, Harkins is described as being the former Vice President of Purchasing. Docs. 55 ¶ 33; 62-3 at 5–6. Defendants merely rehash these same arguments already addressed and rejected by this Court.

"[b]ecause an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). "Thus, the Second Circuit has held that a plaintiff may establish a *prima facie* case of discrimination by showing that he experienced an adverse employment action under circumstances giving rise to an inference of discrimination." *Sollazzo v. Just Salad Restaurant*, No. 15-cv-0252 (ER), 2018 WL 1273661, at *5 (S.D.N.Y. Mar. 5, 2018). Indeed, "showing that the employer treated a similarly situated employee differently is a common and especially effective method of establishing a *prima facie* case of discrimination." *Desiderio*, 2024 WL 4026260, at *12 (citation and internal quotation marks omitted) (citing *Sollazzo*, 2018 WL 1273661, at *6). As the Court has already explained, Desiderio has proffered sufficient evidence showing that though Harkins and Desiderio held the same position and both became ill, Desiderio was treated significantly different from her male counterpart.

Defendants have not pointed to any case law suggesting otherwise. Defendants cite *Jordan v. United Health Group Inc.*, 783 F. App'x 31 (2d Cir. 2019) for the proposition that "discriminatory animus may only be properly inferred where 'the conduct for which the employer imposed discipline was of comparable seriousness to the conduct of the similarly situated but undisciplined employees.'" Doc. 72 at 7 (citation and internal quotation marks omitted) (quoting *Jordan*, 783 F. App'x at 33).[6] But this provides no support for Defendants' position. In *Jordan*, the plaintiff attempted to show that she was subject to disparate treatment by showing that similarly situated employees who arrived to work late were not disciplined for their tardiness, while she was. *Jordan*,

---

[6] Defendants also cite *Miller v. Ahearn*, No. 20-cv-2950 (NSR), 2024 WL 3876378 (S.D.N.Y. Aug. 20, 2024), which is inapplicable to facts of this case for the same reasons as *Jordan*. There, the Court determined that the conduct for which allegedly similarly situated employees were less harshly disciplined for was not of comparable seriousness, and thus did not carry an inference of discrimination. *See id.* at *3.

783 F. App'x at 33. The Court rejected this argument because the plaintiff did not offer any evidence showing that the other employees' absences were unapproved and therefore subject to discipline. *Id.* Thus, because the conduct for which the employer imposed discipline was not of comparable seriousness to the conduct of the similarly situated but undisciplined employees, there is no inference of discrimination. *Id.* Unlike *Jordan*, the underlying circumstances leading to the disparate treatment are similar. Both employees became ill and required leave, however, Desiderio was terminated, while Harkins was provided with a host of benefits.

Because Defendants have not offered any change in controlling law or demonstrated how the Court erred in applying the *McDonnell Douglas* burden-shifting framework, Defendants' arguments amount to mere disagreement with the Court's conclusion. Defendants simply repeat the arguments made in their motion for summary judgement, which the Court had already rejected. *See Southwest Marine & General Insurance Co. v. United Specialty Insurance Co.*, No. 19-cv-8857 (ER), 2022 WL 3904096 (S.D.N.Y. Aug. 30, 2022) ("[A motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." (quoting *Analytical Surveys*, 684 F.3d at 52)); *E.E.O.C. v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 651 (S.D.N.Y. 2010).

Accordingly, Defendants' motion for reconsideration with respect to the Title VII gender discrimination claim is DENIED.

### B. NYSHRL and NYCHRL Claims

Defendants also argue that its motion for summary judgement on the NYSHRL and NYCHRL claims should be granted. Although the Court denied Defendants' motion to dismiss the NYSHRL and NYCHRL claims in a prior opinion, Defendants argue that because the Court recently determined in its summary judgement order that the events taking place at the Long Island City meeting were not an adverse employment action, Desiderio cannot avail herself of the New York statutes because she is Florida resident,

and the impact of her allegedly discriminatory termination was thus not felt in New York.
Doc. 72 at 8–10.

    *1. Adverse Employment Action*

    Defendants' argument that Desiderio cannot avail herself of the NYCHRL and
NYSHRL rests on the Court's determination that the discipline imposed by Coleman
following the Long Island City meeting does not constitute an adverse employment
action because it did not result in any materially adverse changes to the terms and
conditions of Desiderio's employment.  *See Desiderio*, 2024 WL 4026260, at *11
("[T]hese incidents, viewed individually or cumulatively, do not result in any *materially
adverse* change in the terms and conditions of [Desiderio's] employment.  Accordingly,
Coleman's reprimands do not constitute adverse employment actions." (emphasis
added)).  At the time of that decision, the law in in this circuit was that "[a] plaintiff
sustains an adverse employment action if he or she endures a materially adverse change
in the terms and conditions of employment."  *Vega v. Hempstead Union Free School
District*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Galabya v. New York City Board of
Education*, 202 F.3d 636, 640 (2d Cir. 2000)).  However, since then, courts have
explained that—following the Supreme Court's decision in *Muldrow v. City of St.
Louis*—a plaintiff no longer needs to show that the adverse employment decision resulted
in a material change to the terms and conditions of employment.  601 U.S. 346, 355
(2024) (rejecting the notion that in title VII cases "the harm incurred [must be] significant
. . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage
to the employee must exceed a heightened bar").

    Although *Muldrow* was a Title VII case involving transfers, courts have extended
its holding to situations where the statutory text of an anti-discrimination provision is
devoid of any indication of some kind of materiality requirement.  *See, e.g.*, *Anderson v.
Amazon.com, Inc.*, No. 23-cv-8347 (AS), 2024 WL 2801986, at *10 (S.D.N.Y. May 31,
2024) ("As in the Title VII context, '[t]here is nothing in [§ 1981] to distinguish . . .

between [adverse actions] causing significant disadvantages and [adverse actions] causing not-so-significant ones.  And there is nothing to otherwise establish an elevated threshold of harm.  To demand 'significance' is to add words—and significant words, as it were—to the statute Congress enacted.  It is to impose a new requirement on a [§ 1981] claimant, so that the law as applied demands something more of her than the law as written.'" (quoting *Muldrow*, 601 U.S. at 355)); *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 90–91 (S.D.N.Y. 2024) ("The Court also holds that *Muldrow* applies to discrimination claims under the ADEA and ADA, given that the pertinent language in those statutes is similar to the pertinent language in Title VII.").

  *a.  NYSHRL and NYCHRL Standards*

  Employment discrimination claims under the NYSHRL historically have been "analyzed identically to claims under Title VII."  *See Mitchell*, 745 F. Supp. 3d at 106 (citation omitted); *Mitura v. Finco Services, Inc.*, 712 F. Supp. 3d 442, 452 n.4 (S.D.N.Y. 2024) ("Until recently, courts applied the same standard to discrimination claims brought under federal law and the NYSHRL.").  Indeed, the Court did so in its original summary judgement decision.  *See Desiderio*, 2024 WL 4026260, at *10–14.  However, "[t]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the NYCHRL."  *Mitchell*, 745 F. Supp. 3d at 106 (quoting *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021)).  Before the amendments, the standards for an adverse employment action under the NYCHRL and NYSHRL were considerably different.  Under the NYCHRL the adverse action need not be "material"; instead, a plaintiff need only "show differential treatment—that [she] was treated less well— because of discriminatory intent."  *Livingston*, 563 F. Supp. 3d at 234 (internal quotation marks omitted) (quoting *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)); *Torre v. Charter Communications, Inc.*, 493 F. Supp. 3d

276, 285 (S.D.N.Y. 2020). Meanwhile, the NYSHRL closely followed the standard under Title VII which required the adverse action to materially impact the terms and conditions of employment. *Mitura*, 712 F. Supp. 3d at 452 n.4 ("The amended NYSHRL eliminates the requirement that harassing or discriminatory conduct be 'severe or pervasive' for it to be actionable; [i]nstead, the conduct need only result in 'inferior terms, conditions or privileges of employment.'" (citation omitted)).

Since the passage of the amendments, courts have not yet clarified "whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law," however, courts have consistently recognized that the current NYSHRL standard is intended to "come closer" to the standard of the NYCHRL. *See, e.g.*, *Mitchell*, 745 F. Supp. 3d at 106–07; *Darwin v. Newburgh Operations, LLC*, No. 22-cv-0872 (LTS), 2025 WL 104140, at *8 (S.D.N.Y. Jan. 15, 2025); *Shaughnessy v. Scotiabank*, No. 22-cv-10870 (LAP), 2024 WL 1350083, at *10 (S.D.N.Y. Mar. 29, 2024) ("Though the post-amendment standard under the NYSHRL comes closer to the standard of the NYCHRL, it remains unclear whether the two standards were intended to be co-extensive or whether a plaintiff's burden under the NYSHRL resides somewhere between his burdens under [Title VII] and the NYCHRL.").

Nonetheless, because a Title VII plaintiff need no longer establish the materiality of the adverse action, the gap between the strictest standard—federal law—and the most lenient—the NYCHRL—has closed considerably. Without deciding exactly how the three standards differ, if at all, the Court finds that if a plaintiff has a triable claim under *Muldrow*, she necessarily also has a triable claim under the NYSHRL and NYCHRL. *See Darwin*, 2025 WL 104140, at *8 ("[D]espite the now more forgiving standard applicable for federal employment discrimination claims under *Muldrow*, if [plaintiff] has a triable discrimination claim under the ADA, she necessarily has a triable claim under the NYCHRL."); *Anderson*, 2024 WL 2801986, at *11 ("These standards are similar to that

articulated in *Muldrow*, so the same conclusion follows: [Plaintiff] had adequately pleaded discrimination claims under the NYCHRL and NYSHRL.").[7]

Although the adverse action under *Muldrow* does not need to be *materially* adverse, Desiderio still must establish some harm concerning her employment terms or conditions. *Muldrow*, 601 U.S. at 354–55. Terms and conditions in an employment discrimination claim cover more than just "economic or tangible" factors and apply beyond a "narrow contractual sense," however, the plaintiff must allege some harm that has left her "worse off." *Id.* (citation omitted). But even under *Muldrow* not all workplace events that are unpleasant are adverse employment actions. *Mitchell*, 745 F. Supp. 3d at 91. For example, "mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment." *Id.* (quoting *Rios v. Centerra Group LLC*, 106 F.4th 101, 112–13 (1st Cir. 2024)).

Here, Desiderio points to the Long Island City meeting and the accompanying discipline as an adverse employment action. Doc. 61 at 12–13. At the meeting Desiderio asserts that Coleman was noticeably upset and was "yelling at [her] . . . completely intimidat[ing her] . . . [s]tanding over [her]," and "treat[ing her] like . . . a child." Doc. 62-1 at 32–34. Desiderio stated that she left the meeting "terrified, shaking, hysterical [sic] crying." *Id.* at 35. There is also evidence to support Desiderio's assertion that the following day, Coleman publicly humiliated plaintiff and undermined her reputation by sending an email to Hudson's leadership accusing her of "turn[ing] a blind eye" to

---

[7] The New York City Council has emphasized that "interpretations of state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall." *Darwin v. Newburgh Operations, LLC*, No. 22-cv-0872 (LTS), 2025 WL 104140, at *8 (S.D.N.Y. Jan. 15, 2025) (quoting *Ya-Chen Chen v. City University of New York*, 805 F.3d 59, 75 (2d Cir. 2015)). Moreover, the Second Circuit has instructed that, at least with respect to the city statute, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Id.* (internal quotation marks omitted) (quoting *Ya-Chen Chen*, 805 F.3d at 75). It is not clear whether these instructions are meaningful in light of the 2019 amendments to the NYSHRL and the impact of *Muldrow* on the federal standard.

inappropriate behavior and "violating the company's antiharassment policy." Docs. 62-10 at 1; 63 ¶ 12. The same day, Coleman sent an email to Desiderio criticizing her handling of the investigation and directing Desiderio to undergo a three-part action plan. This plan required Desiderio to (1) re-take the anti-harassment manager training; (2) participate in a manager training course; and (3) update her 2021 goals to include behavioral metrics towards improving her managerial skills. Docs. 63 ¶ 13; 54-6 at 6. Finally, Desiderio maintains that Coleman also "humiliated" her when he criticized her management skills and blamed her for inventory shortages, which he later determined were caused by Hudson's limited inventory space and problems with inventory tracking. Docs. 54-6 at 11; 61 at 13; 63 ¶ 18.

The Court finds that a reasonable jury could conclude that these actions left Desiderio "worse off" with respect to the terms and conditions of her employment. *Muldrow* made clear that "some harm respecting an identifiable term or condition of employment" covers more than just "economic or tangible" harms. 601 U.S. at 347, 359 (citation omitted) ("The [action] must have left her worse off, but need not have left her significantly so."). Although it is not explicitly stated by Desiderio, the record contains sufficient factual matter showing that: (1) the three-part action plan saddled Desiderio with additional and possibly unnecessary tasks on top of her other work responsibilities; (2) a reasonable inference can be drawn that her humiliation before Hudson leadership may have tarnished her reputation at work and could have an impact on her future prospects of a promotion or raise; and (3) the berating by Coleman contributed to the underlying medical conditions which ultimately required Desiderio to take medical leave. The Court finds that this is sufficient under *Muldrow*. *See, e.g.*, *Anderson*, 2024 WL 2801986, at *11 (finding that plaintiff's placement on a performance improvement plan was an adverse action because it "adversely affected [her] benefits, privileges, terms, or conditions of employment by saddling her with more and worse tasks, tarnishing her permanent record, dampening her prospects of a promotion or raise, temporarily

preventing her from transferring, excluding her from certain meetings and projects, and so on."); *Ciotti v. City of New York*, No. 23-cv-10279 (ER), 2025 WL 308022, at *13 (S.D.N.Y. Jan. 27, 2025) (finding an adverse employment action where the plaintiff was required to engage in unwanted counseling sessions and was subjected to repetitive and unnecessary urine testing).

Because the Court finds that Desiderio has suffered an adverse employment action under *Muldrow* with respect to her Title VII discrimination claim, she also satisfies the more lenient standards under both the NYCHRL and NYSHRL.

### 2.  *Inference of Discrimination*

Although the Court finds that the discipline by Coleman constitutes an adverse employment action, to establish a *prima facie* discrimination claim under the NYSHRL and NYCHRL, Desiderio must prove more.[8]

Desiderio's Title VII, NYSHRL, and NYCHRL discrimination claims are all analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Montgomery v. New York City Transit Authority*, No. 17-cv-6522 (JMF), 2019 WL 1258482, at *3 (S.D.N.Y. Mar. 19, 2019) ("[T]itle VII, the NYSHRL, and the NYCHRL . . . are [all] subject to the well-established three-step *McDonnell Douglas* burden-shifting framework."), *aff'd*, 806 F. App'x 27 (2d Cir. 2020).  A plaintiff's first step under *McDonnell Douglas* is to establish a *prima facie* case of discrimination.  *Banks*, 81 F.4th at 270 (quoting *Weinstock*, 224 F.3d at 42).

To establish a *prima facie* case of discrimination under the NYSHRL and NYCHRL, "a plaintiff must allege that (1) he or she is a member of a protected class, (2) he or she was qualified to hold the position, (3) he or she was subject to an unfavorable

---

[8] Because the Court determined in its summary judgement decision that the discipline by Coleman did not constitute an adverse employment action, the Court did not proceed to evaluate whether it took place under circumstances giving rise to an inference of discrimination.

change or treated less well than other employees, and (4) the unfavorable change or different treatment occurred under circumstances giving rise to an inference of discrimination." *See Mitchell*, 745 F. Supp. 3d at 104; *Livingston*, 563 F. Supp. 3d at 233–35.  It is undisputed that Desiderio is a member of a protected class and was qualified for the position, and because the Court has already determined that Desiderio has shown unfavorable treatment, the Court now moves to whether Coleman's discipline took place under circumstances giving rise to an inference of discrimination.

"[A]s with Title VII, the NYCHRL 'is not a general civility code,' and where a plaintiff fails to demonstrate that the defendant's conduct was caused 'at least in part by discriminatory or retaliatory motive,' . . . plaintiff's claim must fail." *Livingston*, 563 F. Supp. 3d at 233–34 (quoting *Ramirez v. Michael Cetta Inc.*, No. 19-cv-986 (VEC), 2020 WL 5819551, at *18 (S.D.N.Y. Sept. 30, 2020)).  "[A] plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive," and "cannot meet its burden through reliance on unsupported assertions." *Bennett v. Watson Wyatt & Company*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002); *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Griffin v. Ambika Corporation*, 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000) (quoting *Bickerstaff v. Vassar College*, 196 F.3d 435, 451–52 (2d Cir. 1999)).  "A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge," is also insufficient. *Fincher v. Depository Trust & Clearing Corporation*, No. 06-cv-9959 (WHP), 2008 WL 4308126, at*3 (S.D.N.Y. Sep. 17, 2008).

In an attempt to show discrimination, Desiderio argues that she received disparate treatment from her male coworkers. *See* Doc. 61 at 16–18.  Specifically, Desiderio asserts that Coleman never treated a male employee similarly, had never publicly humiliated an employee in a similar manner to his email to Hudson's leadership team,

and that no male employee had ever been subjected to such humiliating corrective steps as her three-step disciplinary action plan. *Id.* However, Desiderio points to no specific evidence to support these assertions, and does not identify any similarly situated employee who the Court can compare.

Indeed, an inference of discrimination can be draw when "similarly situated" employees are "treated differently." *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 63–64 (2d Cir. 1997). However, for an employee to be considered similarly situated, they "must be similarly situated in all material aspects." *Jordan v. United Health Group Inc.*, 783 F. App'x 31, 33 (2d Cir. 2019) (quoting *Shumway*, 118 F.3d at 64). Moreover, "to satisfy the all material respects requirement, a plaintiff must show that similarly situated employees engaged in comparable conduct, meaning there is a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, such that the conduct for which the employer imposed discipline was of comparable seriousness to the conduct of the similarly situated but undisciplined employees." *Jordan v. United Health Group Inc.*, 783 F. App'x 31 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Graham v. Long Island Railroad*, 230 F.3d 34, 40 (2d Cir. 2000)).

Here, Desiderio appears to argue that merely because she was disciplined harshly for her handling of the incident, and in some unidentified situations some unidentified male employees were either not disciplined or received more lenient punishment, her treatment must have been because of her gender. But such a conclusory leap is insufficient to raise an inference of discriminatory intent. *See Barney v. H.E.L.P. Homeless Service Corp.*, No. 19-cv-5959 (KPF), 2021 WL 4267629, at *17 n.24 (S.D.N.Y. Sept. 20, 2021) ("Plaintiff does little to establish that Jattan was similarly situated to him, aside from submitting that she was a fellow Clinical Social Worker in the New Beginnings Program. Importantly, there is no evidence before the Court that Jattan had similar disciplinary issues that were handled differently by Goodrich . . . The Court thus cannot find that Plaintiff has established a *prima facie* case of unlawful termination

merely on the basis on [Plaintiff's] contentions . . . ." (citation omitted)); *Colon v. City of New York*, No. 19-cv-10435 (PGG) (SLC), 2021 WL 4943552, at *16 (S.D.N.Y. Jan. 15, 2021), *report and recommendation adopted*, No. 19-cv-10435 (PGG) (SLC), 2021 WL 4427169 (S.D.N.Y. Sept. 26, 2021) ("[Plaintiff] appears to base . . . [his claim] on the theory that, that because he was charged and terminated, and others outside his protected group were not, it must have been because he was Hispanic, but such a conclusory leap is not sufficient to allege a plausible inference that his Hispanic background was a 'motivating factor' in the Disciplinary Charges or his Termination.").

In her opposition to Defendants' motion for summary judgment, Desiderio cited *Harding v. Dorilton Capital Advisors LLC*, 635 F. Supp. 3d 286 (S.D.N.Y. 2022) as an example of a case where the Court could discern an inference of discrimination despite limited factual assertions with respect to whether the plaintiff's alleged comparators were similarly situated in all material respects. *See* Doc. 61 at 17–18. There, however, the plaintiff did allege that he received worse treatment than the white employees who were on his team, under the supervision by the same individual, and responsible for similar or identical work product. *Harding*, 635 F. Supp. 3d at 299. Moreover, the Court determined that this was sufficient *at the motion to dismiss stage*, but recognized that if, as discovery unfolds, it turned out that the individuals were not similarly situated it would be appropriately addressed on a motion for summary judgement. *Id.* at 299–300. Here, even after substantial discovery, Desiderio has failed to point to a single specific instance of any employee who was similarly situated and subject to disparate treatment despite similar conduct underlying the disciplinary action.

Accordingly, the Court finds that although the discipline by Coleman is an adverse employment action, Desiderio fails to establish that her discipline occurred under circumstances giving rise to an inference of discrimination; thus, she fails make a *prima facie* case of discrimination with respect to this action.

3. *Defendants' Motion for Reconsideration*

Because the Court finds that Desiderio has not met her burden of showing that the discipline by Coleman occurred under circumstances giving rise to an inference of discrimination, the Court proceeds by reviewing Defendants' motion for reconsideration which argues that because Desiderio's termination is the only adverse employment action before the Court and because Desiderio, a Florida resident, did not feel the impact of her termination in New York, she cannot avail herself of the NYCHRL and NYSHRL. Desiderio responds by arguing that Defendants' motion for reconsideration is untimely, makes new arguments that it failed to raise in its motion for summary judgement, and otherwise fails to identify circumstances warranting reconsideration by this Court. Doc. 73 at 12–15.

To the extent that Desiderio argues that Defendants' motion for reconsideration is untimely, the Court disagrees. Motions for reconsideration are governed by S.D.N.Y. Local Civil Rule 6.3 which provides that "a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged." Desiderio argues that Defendants' motion filed on September 16, 2024 asks the Court to reconsider the Court's denial of the motion to dismiss the NYCHRL and NYSHRL claims entered on January 13, 2023, not its order of summary judgement entered on September 3, 2024. Doc. 73 at 6, 12.

In its 2023 opinion addressing Defendants' motion to dismiss the NYSHRL and NYCHRL claims because of Desiderio's status as a Florida resident, the Court found that there was a sufficient nexus between New York and the discipline imposed by Coleman that took place in Long Island City and denied the motion. *Desiderio*, 2023 WL 185497, at *6.

In doing so, the Court explained that non-residents who work in New York City may state claims pursuant to the NYSHRL and the NYCHRL. *See Hoffman v. Parade Publications*, 933 N.E.2d 744, 746–47 (N.Y. 2010); *E.E.O.C. v. Bloomberg L.P.*, 967 F.

Supp. 2d 816, 865 (S.D.N.Y. 2013).  However, to state a claim under either the NYSHRL
or NYCHRL, a non-resident plaintiff must allege that the impact of the discriminatory
conduct was felt in New York or New York City, respectively.  *See Shiber v. Centerview
Partners LLC*, 21-cv-3649 (ER), 2022 WL 1173433, at *4 (S.D.N.Y. Apr. 20, 2022).  It
does not matter where the conduct originated.  *Id.* at *4 (citing *Vangas v. Montefiore
Medical Center*, 823 F.3d 174, 182–83 (2d Cir. 2016)); *Amaya v. Ballyshear LLC*, 340 F.
Supp. 3d 215, 221 ("[I]t is the site of the impact, not the place of origination, that
determines where discriminatory acts occur." (citation omitted)).  The impact requirement
applies to employees working remotely, out-of-state for a New York employer; the fact
that an allegedly unlawful decision terminating a plaintiff's employment occurred in New
York is insufficient by itself to plead impact in New York.  *See Pakniat v. Moor*, 145
N.Y.S.3d 30, 31 (N.Y. App. Div. 2021).

Defendants argued that "the impact of the alleged discriminatory conduct did not
occur in New York because her panic attacks, anxiety, depression, and insomnia did not
begin until after she returned to Florida."  *Desiderio*, 2023 WL 185497, at *6.  In support,
Defendants cited *Meilus v. Restaurant Opportunities Center United, Inc.*, No. 21-cv-
02554 (CM), 2021 WL 4868557 (S.D.N.Y. Oct. 15, 2021), which explained that
"[t]hough the [complaint] contains allegations which mention Plaintiff Meilus' travels to
New York and attendance at events in New York—travels and events at which some of
the allegedly discriminatory acts occurred—the impact on Meilus was ultimately at her
duty station, which is not in New York.  Certainly, the impact of her termination—
whether based on gender or age discrimination or on retaliation—was felt in Washington
D.C., not in New York."  *Meilus*, 2021 WL 4868557, at *11.

Nonetheless, this Court denied Defendants' motion, explaining that *Meilus* "made
clear that other courts have found that to the degree incidents of harassment or retaliation
occur while a plaintiff is in New York City and among those who work in the city, there is
no reason *those* claims cannot proceed."  *Desiderio*, 2023 WL 185497, at *6 (emphasis

added) (citing *Meilus*, 2021 WL 4868557, at *11).  The Court then explained that unlike *Meilus*, Desiderio specifically alleged that she did attend a meeting in New York where she allegedly experienced gender-based discriminatory treatment, and that this was "sufficient for NYCHRL and NYSHRL purposes because it is not simply the location where the discriminatory act took place, but also where Desiderio alleges that she felt the impact of the discriminatory conduct."  *Desiderio*, 2023 WL 185497, at *6; *Meilus*, 2021 WL 4868557, at *11 ("[T]he [complaint] does not make clear whether any of the incidents on which Meilus bases her claims took place while she was in New York.").  The Court thus permitted Desiderio's NYSHRL and NYCHRL claims to move forward because of the alleged incidents that took place in New York.  *Desiderio*, 2023 WL 185497, at *6.

At the time of that decision, Defendants had no justification to question the Court's determination that Desiderio's NYSHRL and NYCHRL claims could proceed with respect to the alleged Long Island City gender-based discrimination, the impact of which was felt in New York.  It was not until the court determined in its summary judgement order that this was not an adverse employment action that Defendants had reason to again challenge Desiderio's ability to avail herself of the NYCHRL and NYSHRL with respect to the termination alone.  *Desiderio*, 2024 WL 4026260, at *11 ("[T]hese incidents, viewed individually or cumulatively, do not result in any material change in the terms and conditions of [Desiderio's] employment.  Accordingly, Coleman's reprimands do not constitute adverse employment actions.").  Although *Muldrow* now requires a different conclusion, Defendants' motion for reconsideration as it relates to that determination was properly served within 14 days of the Court's summary judgment order.  *See* Doc. 68; Doc. 71.

Desiderio also argues that Defendants make new arguments in their motion for reconsideration that were not briefed in its motion for summary judgement.  Doc. 73 at 13.  But as the Court just explained, these are not new arguments because the issue raised

by Defendants in this motion simply was not apparent until the Court determined that the specific discriminatory conduct whose impact was felt in New York was not an adverse employment action.

Having determined today that the discipline by Coleman did not occur under circumstances giving rise to an inference of discrimination, the only remaining alleged adverse employment action is Desiderio's termination. Desiderio argues that Defendants' motion for reconsideration does not identify any intervening change in controlling law, new evidence, or the need to correct clear error or prevent manifest injustice. Doc. 73 at 13–14. However, the Court finds that it would be clear error to let Desiderio's NYCHRL and NYSHRL claims proceed on the sole basis of her alleged discriminatory termination.

Desiderio, a Florida resident, alleges that she worked remotely during the COVID-19 pandemic, but describes specific instances of meetings taking place in New York. Doc. 44 ¶ 4, 9. In the Long Island City meeting on July 9, 2021, Desiderio alleges harsh treatment by Coleman, which she describes as motivated by gender discrimination. *Id.* ¶ 21. However, the Court has determined that this did not occur under circumstances giving rise to an inference of discrimination. Following this meeting, Desiderio began experiencing panic attacks, anxiety, depression, insomnia, and tearfulness. Doc. 44 ¶ 22. On July 16, Desiderio was diagnosed with a serious medical condition, and on July 18, 2021, Desiderio's husband communicated to Defendants that Desiderio required medical leave. *Id.* ¶ 23–25. Desiderio was allegedly terminated on October 27, 2021. *See id.* ¶ 38–39.

There is no evidence suggesting that Desiderio was in New York for work-related purposes at any point between the Long Island City meeting and the date of her alleged termination, which is the only remaining allegedly discriminatory conduct before the Court. *See Desiderio*, 2024 WL 4026260, at *11–12.

"[C]ourts have consistently emphasized that the location of the impact of the offensive conduct is the location where the plaintiff feels the impact *of a violation* of the

28

NYCHRL on his or her employment." *Desiderio*, 2023 WL 185497, at *6 (emphasis added) (quoting *Anderson v. HotelsAB, LLC*, No. 15-cv-712 (LTS) (JLC), 2015 WL 5008771, at *3 (S.D.N.Y. Aug. 24, 2015)); *Hoffman*, 933 N.E.2d at 747 (plaintiff must "plead and prove that the alleged discriminatory conduct had an impact in New York"). The only alleged violation of the NYCRHL and NYSHRL remaining at this stage of the litigation is Desiderio's alleged discriminatory termination, the effects of which were undeniably felt in Florida, not New York. *See Hoffman*, 933 N.E.2d at 748 ("Hoffman was neither a resident of, nor employed in, the City or State of New York. Nor does Hoffman state a claim that the alleged discriminatory [termination] had any impact in either of those locations."); *Meilus*, 2021 WL 4868557, at *11 ("Certainly, the impact of her termination—whether based on gender or age discrimination or on retaliation—was felt in Washington D.C., not in New York."); *King v. Aramark Services Inc.*, 96 F.4th 546, 558 (2d Cir. 2024) ("[T]he lion's share of the discriminatory conduct that collectively comprises [Plaintiff]'s hostile work environment claim, and her discriminatory and/or retaliatory termination was directed at her in *Virginia*, not New York. [Plaintiff]'s allegations are thus insufficient to support the inference that the impact of Aramark's allegedly discriminatory acts was felt in New York . . . .").

The Court finds that based on the foregoing, it would be clear error to retain the NYSHRL and NYCHRL claims. Accordingly, Defendants' motion for reconsideration is GRANTED.

### C. Leave to Amend

Desiderio requests leave to amend her complaint to add allegations that if she had continued her employment with Hudson, she would have been expected to come to the New York Office. Doc. 73 at 15.

As a general matter, leave to file an amended complaint is freely granted when justice so requires, and "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.

2007).  A district court may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Id.*  An amendment is considered futile where the plaintiff is unable to demonstrate that he would be able to cure the defects in a manner that would survive a motion to dismiss.  *See Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

Although the impact test set forth in *Hoffman* has not changed since this Court previously addressed Defendants' motion to dismiss, Defendants cite a recent decision where, after certification of the question by the Second Circuit, the New York Court of Appeals was asked to clarify whether under *Hoffman* a non-resident plaintiff alleging a failure to promote or hire claim feels discriminatory impact if they proactively sought an actual New York City or State based job opportunity.  *See Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 235 N.E.3d 351 (2024); *id.* at 452 n.1 ("The certified question presumes that *Hoffman*'s impact test applies here.  Plaintiff concedes that the test governs this matter and does not request that we revisit our holding in *Hoffman.*"); *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 71 (2d Cir. 2023).  The Court of Appeals answered that "[f]or purposes of the impact test, a failure to hire or promote case is distinct from a discriminatory termination case, like *Hoffman*," and that a non-resident who has been discriminatorily denied a job in New York City or New York state loses out on the chance to work and perhaps live in those areas, thus creating an impact that is felt in New York.  *Syeed*, 41 N.Y.3d at 452–53 ("The prospective employee personally feels the impact of a discriminatory refusal to promote or hire in New York City or State, because that is where the person wished to work (and perhaps relocate) and where they were denied the chance to do so.").

Although Desiderio's remaining claim is one for discriminatory termination, this Court has granted leave to amend the complaint in similar factual circumstances in order for the employee show that but for the discriminatory termination, she would have been expected to work in-person at her employer's New York office.  *Shiber v. Centerview Partners LLC*, No. 21-cv-3649 (ER), 2024 WL 3274420, at *3–4 (S.D.N.Y. July 2, 2024).

In *Shiber*, the Court explained that even though *Syeed* makes a distinction between the impact test for a failure to hire or promote case and a discriminatory termination case, the terminated employee's situation more closely resembled that of "a non-resident who engaged in affirmative conduct to obtain an actual job opportunity based in New York City or State," than *Hoffman* where "the plaintiff was a Georgia resident who worked in Georgia and wished to retain his Georgia employment." *Id.* at *4 (citations omitted). Accordingly, the Court allowed the plaintiff to amend her complaint to show that had she not been terminated, she would have been expected to return to work in-person at the New York City office.

Without deciding today whether and what information is sufficient for a terminated non-resident employee to show impact under *Syeed*, Desiderio's request for leave to amend the complaint is GRANTED.

## IV.    CONCLUSION

For the foregoing reasons, the motion is GRANTED in part and DENIED in part. Specifically, Defendants' motion is GRANTED with respect to Desiderio's NYSHRL and NYCHRL causes of action, and DENIED with respect to the Title VII discriminatory termination claim. Desiderio's request for leave to amend is GRANTED. Desiderio must file an amended complaint, if at all, by May 23, 2025. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 71.

It is SO ORDERED.

Dated:    May 2, 2025
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

31