UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STARYL DESIDERIO,

                Plaintiff,

     – *against* –

HUDSON TECHNOLOGIES, INC. and
BRIAN COLEMAN,

              Defendants.

**<u>OPINION & ORDER</u>**

22-cv-00541 (ER)

<u>RAMOS, D.J.</u>:

On September 3, 2024 the Court denied in part and granted in part a motion for summary judgment filed by Hudson Technologies, Inc. ("Hudson") and Brian Coleman (together, "Defendants"). Doc. 68. Staryl Desiderio filed a motion for reconsideration on September 16, 2024. Doc. 71. On reconsideration, the Court granted the motion as to Desiderio's New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") claims, denied it as to the Title VII discriminatory termination claim, and granted her request for leave to amend on May 2, 2025. Doc. 75. Before the Court is Defendants' motion for partial summary judgment on the NYSHRL and NYCHRL claims. Doc. 84. For the reasons set forth below, the motion is GRANTED.

## I.      BACKGROUND

The Court assumes familiarity with the underlying facts, which are described in detail in the Court's prior opinions. *See generally Desiderio v. Hudson Technologies, Inc.*, No. 22-cv-00541 (ER), 2023 WL 185497 (S.D.N.Y. Jan. 13, 2023) (granting and denying in part Defendants' motion to dismiss); *Desiderio v. Hudson Technologies, Inc.*, No. 22-cv-00541 (ER), 2024 WL 4026260 (S.D.N.Y. Sept. 3, 2024) (granting and denying in part Defendants' motion for summary judgement); *Desiderio v. Hudson Technologies, Inc.*, No. 22-cv-00541 (ER), 2025 WL 1285278, at *1 (S.D.N.Y. May 2,

2025) (granting and denying in part Defendant's motion for reconsideration). The Court repeats the relevant background as necessary to resolve the instant motion.

### A. Factual Background

Desiderio is a Florida resident. Doc. 44 ¶ 4. Desiderio's employment with Hudson began October 10, 2017 after Hudson acquired her former employer, Airgas Refrigerants, Inc. Doc. 63 ¶ 1. A few months after the acquisition, Desiderio was promoted to Vice President of Purchasing. *Id.* On March 24, 2021, Coleman, Hudson's President and Chief Executive Officer, promoted Desiderio to Vice President of Supply Chain Management, which included expanded responsibilities and required her to report to Coleman. *Id.* ¶ 2; Doc. 44 ¶ 11. Desiderio alleges that she worked at the Long Island City office; however, like other managerial employees, she worked remotely during the COVID-19 pandemic. Doc. 44 ¶ 9. Specifically, Desiderio alleges she frequently worked in New York and regularly attended meetings at both the Long Island City and Pearl River offices "on multiple days each month." Doc. 88 ¶ 1.

On June 4, 2021, two subordinates of Desiderio reported to Hudson's Human Resources Manager, Nicole Hagan, that Chris Wresche, a recent addition to the customer group, had made sexually inappropriate comments, including a remark about naked yoga. Doc. 63 ¶ 3. Hagan informed Desiderio of the complaint, and Desiderio instructed Hagan to investigate further. *Id.* ¶ 4.

On June 8, 2021, Desiderio alerted Coleman to the incidents. *Id.* ¶ 6. However, Coleman asserts that he did not learn the full extent of the charges until speaking with Hagan later that day. Defendants' Local Rule 56.1 Statement of Undisputed Material Facts ("Doc. 55") ¶ 8. Coleman also learned from Hagan that Desiderio still wanted to retain Wresche, despite the allegations. *Id.* ¶ 9. According to Desiderio, however, because the investigation was still ongoing, she did not have all the facts at the time she met with Coleman. Doc. 63 ¶ 8.

Also on June 8, 2021, Desiderio attended a scheduled meeting with Hagan at the Pearl River office.  Doc. 77 ¶ 19.  At the meeting, Hagan informed Desiderio that Wresche had been terminated immediately at Coleman's instructions.  *Id.*

The following day, June 9, 2021, Coleman brought Desiderio in for a meeting at Hudson's Long Island City office (the "Long Island City meeting").  Docs. 55 ¶ 11; 44 ¶ 19.  During the meeting, Coleman raised his voice in what he characterized as frustration with Desiderio's lapse of judgement.  Doc. 55 ¶ 11.  According to Desiderio, she was "terrified" by Coleman who was "yelling at [her] . . . completely intimidat[ing her] . . . [s]tanding over [her]," and "treat[ing her] like . . . a child."  Doc. 62-1 at 32–34.  Desiderio stated that she left the meeting "terrified, shaking, hysterical [sic] crying."  *Id.* at 35.

The next day Coleman sent an email to members of Hudson's leadership, which did not mention Desiderio by name but clearly referred to her, stating that "a management-level employee had taken actions that violated our Company's anti-harassment policy," and that he "will not tolerate members of our leadership team who … turn a blind eye to such behavior rather than addressing, and remediating, it immediately."  Docs. 63 ¶ 12; 62-10 at 1.

Coleman also sent an email to Desiderio criticizing her handling of the situation and imposing a three-step action plan requiring Desiderio to:  (1) re-take the anti-harassment manager training; (2) participate in a manager training course; and (3) update her 2021 goals to include behavioral metrics toward improving her managerial skills.  Docs. 63 ¶ 13; 54-6 at 6.  Coleman also informed Desiderio that he would be asking her team for feedback regarding her management skills, and would therefore be conducting a 360-manager review survey.  *Id.*

Also in June 2021, Desiderio asserts that Coleman blamed inventory shortages on Desiderio's managerial failures.  Doc. 63 ¶ 18.  According to Desiderio, however, there was a significant worldwide shortage of refrigerants at the time resulting in price hikes

and depletion, and Coleman later determined that Hudson's inventory shortages were due to its limited space and inventory tracking problems.  Doc. 63 ¶ 18.

Shortly after the Long Island City meeting, Desiderio began experiencing anxiety, depression, panic attacks, and insomnia.  Doc. 44 ¶ 22.

Desiderio commenced a leave of absence on July 14, 2021, Doc. 88 ¶ 1, when Desiderio's husband texted Coleman stating that he would be taking Desiderio to the hospital the next morning.  Docs. 63 ¶ 19; 54-6 at 18.  Mr. Desiderio texted Coleman with an update the following day, reporting that "she [was] physically and emotionally exhausted, and was headed toward a complete breakdown."  Docs. 63 ¶ 20; 54-6 at 19.  On July 16, 2021, Mr. Desiderio informed Coleman that Desiderio was ill and needed to take sick leave.  Doc. 63 ¶ 21.

On July 18, 2021, Mr. Desiderio sent Coleman an email which included an attached note from the hospital instructing that Desiderio remain away from work until she obtained approval to return by a psychiatrist.  *Id.* ¶ 22; Doc. 54-6 at 25–26.  Mr. Desiderio also reported that Desiderio would be undergoing therapy and asked Coleman to send any other forms that were required for leave purposes.  Docs. 63 ¶ 22; 54-6 at 25.

The next day, Coleman shared his and Hagan's cell phone numbers with Mr. Desiderio.  Doc. 63 ¶ 22.  Hagan then emailed Mr. Desiderio the FMLA leave forms, which Desiderio submitted on August 5, 2021.  *Id.* ¶ 23, 24.  According to Hudson, due to an oversight, Hagan never informed Desiderio that her FMLA leave had been approved, or when it was set to expire.  Doc. 55 ¶ 25 (citing 54-4 at 19–20).

On September 30, 2021, Mr. Desiderio emailed Coleman again, advising him that he was "told by her current therapist that the thought of returning to work with [Coleman] terrifies her," expressing uncertainty that the situation would improve, and that the therapist could not predict a return date.  Docs. 63 ¶ 26; 54-6 at 35.  The email went on to say:  "Under the circumstances, do you think it is best for all involved for her to cut ties with the company?  If so, I'm asking that you put together a severance package for her.

Keep in mind that she has already had to burn up her unused sick and vacation time, as well as bearing the burden of uncovered medical costs for past and future treatment." *Id.*[1] Mr. Desiderio also reminded Coleman in his email that Desiderio's "40-year career [had been] destroyed in less than a month" and expressed "hope [that he] will do right by her now." *Id.* Desiderio alleges she was terminated on October 27, 2021. Doc. 63 ¶ 31.

When asked in her deposition if she thought that she could have returned to work by July 2022, Desiderio responded, "I don't believe so, no." Doc. 54-1 at 72. She also expressed that she did not become able, "from a physical and mental standpoint," to return to work until 2023. *Id.* at 65.

Also on September 30, 2021, Hudson vacated the Long Island City facility. Doc. 88 ¶ 2. Hudson and moved its headquarters from Pearl River, New York to Woodcliff Lake, New Jersey in January 2022. *Id.* Accordingly, Hudson exited New York City by the end of September 2021, and New York state by January 2022.

### B. Procedural Background

Desiderio filed the initial complaint on January 21, 2022, asserting seven claims.[2] Doc. 5. On May 12, 2022, Defendants filed a motion dismiss, seeking to dismiss the first six counts for failure to state a claim. Doc. 20. On January 13, 2023, the Court granted the motion on Counts Two, Three and Five, and denied on Counts One, Four, and Six. Doc. 33.

---

[1] Desiderio alleges that she was unaware at the time that her husband had inquired about a severance package. Doc. 63 ¶ 31.

[2] In the initial complaint, Desiderio brought claims alleging (1) interference with, and retaliation for exercising leave rights under the FMLA (Counts One and Two); (2) disability and gender discrimination in violation of NYSHRL (Counts Three and Four) and the NYCHRL (Counts Five and Six); and (3) breach of contract (Count Seven). Doc. 5. Count Seven was not at issue in the motion to dismiss. Doc. 20.

Defendants filed their answer to the initial complaint on March 23, 2023, Doc. 37, and on June 22, 2023, Desiderio filed an amended complaint.[3]  Doc. 44.  The answer to the amended complaint was filed on July 5, 2023.  Doc. 46.

Defendants filed a motion for summary judgment on September 29, 2023.  Doc. 52.  On September 3, 2024, the Court granted Defendants' motion with respect to Counts One, Two, Three, and Five, and denied with respect to Counts Four, Six, Seven, and Eight.  Doc. 68.  On September 16, 2024, Defendants filed a motion for reconsideration of the Court's denial of their motion for summary judgement on Counts Four, Six, and Eight.  Doc. 71.  On reconsideration, the Court granted the motion as to Desiderio's NYSHRL and NYCHRL claims, denied it as to the Title VII discriminatory termination claim, and granted her request for leave to amend on May 2, 2025.  Doc. 75.

Desiderio filed a second amended complaint on May 23, 2025.  Doc. 77.  The second amended complaint includes the same claims as the amended complaint, Doc. 44, and includes one new allegation:  that Desiderio "would have continued to regularly work in Hudson's New York Office with New York suppliers, vendors, and office staff once she was medically able to return to work, had her employment not been terminated."  Doc. 77 at ¶ 59.  The instant motion for partial summary judgment as to the NYSHRL and NYCHRL claims was filed on July 30, 2025.  Doc. 83.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free School District*, 812 F. Supp. 2d 454, 467

---

[3] In the amended complaint, Desiderio brought claims alleging (1) interference with, and retaliation for exercising leave rights under the FMLA (Counts One and Two); (2) disability discrimination and failure to accommodate in violation of the ADAAA (Counts Three and Five); (3) gender discrimination in violation of the NYSHRL (Count Four), the NYCHRL (Count Six); (4) breach of contract (Count Seven); and gender discrimination in violation of Title VII (Count Eight);.  Doc. 44.

(S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Company*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

In cases based on allegations of discriminatory retaliation, courts use "an extra measure of caution" in considering summary judgment motions "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence."  *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 603 (2d Cir. 2006).

## III.    DISCUSSION

Defendants raise one argument in their renewed motion for partial summary judgment:  that Desiderio is unable to show that the impact of her alleged termination was felt in New York State or in New York City as is required to invoke the protections

afforded by the NYSHRL and NYCHRL.  Doc. 84 at 1.  Specifically, Defendants argue that there is no genuine issue of fact that absent her termination, she would have been expected to work in-person in New York because Hudson had no offices in New York post January 2022.  Doc. 89 at 2; Doc. 88 ¶ 2.

As Courts have explained, "[t]he NYSHRL and NYCHRL protect individuals who live or work in New York or who were 'discriminatorily denied the opportunity' to work and live in New York."  *Ong v. Deloitte Consulting, LLP*, No. 21-cv-2644 (MKV), 2025 WL 886947, at *16 (S.D.N.Y. Mar. 21, 2025) (quoting *Syeed v. Bloomberg L.P.*, 41 N.Y. 3d 446, 453 (2024).  "[T]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the NYCHRL."[4]  *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 106 (S.D.N.Y. 2024) (quoting *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021)).  Recently, the Second Circuit clarified that "[w]hile the NYSHRL historically mirrored the standards applicable under its federal counterparts, it was amended in 2019 to be construed liberally for the accomplishment of the remedial purposes thereof, irrespective of the standards courts have applied to federal civil rights laws."  *Flanagan v. Girl Scouts of Suffolk County, Inc.*, No. 23-7900-cv, 2025 WL 1501751, at *3 (2d Cir. May 27, 2025) (internation quotations and citations omitted).  The *Flanagan* court further explained that the "updated NYSHRL is interpreted 'to align with ... the more liberal pleading standard' applicable to the [NYCHRL].'"  *Id.*

In *Hoffman v. Parade Publications*, the New York Court of Appeals made it clear that "the application of the impact requirement does not exclude all nonresidents from its protection."  15 N.Y.3d 285, 290 (2010).  Instead, *Hoffman* held that NYSHRL and NYCHRL protection extends to those who would work in New York absent

---

[4] The Court noted in its May 2, 2025 Opinion and Order that "courts have not yet clarified 'whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL.'"  Doc. 75 at 18.

discrimination.  In other words, "[c]ourts look to where the impact occurs, not the place of its origination, to determine the location of the discriminatory acts, and the impact needs to be felt by the plaintiff in New York City [for NYCHRL claims]."  *Shiber v. Centerview Partners LLC*, No. 21-cv-3649 (ER), 2022 WL 1173433, at *3 (S.D.N.Y. Apr. 20, 2022).  *Hoffman* "sets forth two ways in which a nonresident may satisfy the impact requirement:  (1) working in New York or (2) establishing that the challenged conduct had some impact on the plaintiff within the respective New York geographic boundaries."  *Syeed*, 41 N.Y.3d at 452.  The *Hoffman* impact test may be satisfied by "those who would work in New York City or State absent discrimination."  *Id.* at 451.

Pursuant to *Hoffman*, the key question is where the plaintiff was located at the time of the allegedly discriminatory action, as opposed to focusing the inquiry on where the decision to terminate the plaintiff was made.  15 N.Y.3d at 290.  This is because courts are reluctant to expand "the NYCHRL to cover any plaintiff who is terminated pursuant to a decision made by an employer from its New York City headquarters regardless of where the plaintiff works."  *Id.*

Applying the impact rule in *Hoffman*, the Court holds that Desiderio's claim fails because she "was neither a resident of, nor employed in, the City or State of New York," and she failed to allege that the discrimination that culminated in her termination "had any impact in" New York.  *Id.* at 292.  Here, Desiderio alleges that she was "terminated under circumstances occurring under an inference of discrimination" on October 27, 2021.  Doc. 87 at 9.  Desiderio further alleges that she "would have continued to regularly work in Hudson's New York Office with New York suppliers, vendors, and office staff once she was medically able to return to work, had her employment not been terminated."  Doc. 77 ¶ 59.  However, Desiderio has acknowledged that she "did not become able, 'from a physical and mental standpoint,' to return to work until 2023," Doc. 68 at 5, and as Defendants argue, Hudson vacated the Long Island City facility, where Desiderio worked when she was in New York for business, on September 30, 2021, and

moved its headquarters from Pearl River to New Jersey in January 2022.  Doc. 84 at 3. In fact, when asked in her deposition if she thought that she could have returned to work by July 2022, Desiderio responded, "I don't believe so, no."  Doc. 54-1 at 72.  Therefore, as Defendants argue, even if Desiderio had returned to Hudson in January 2023 when she was cleared to return to work, she would have worked from the New Jersey office when she was not otherwise working in Florida, given that the New York offices no longer existed.  Doc. 84 at 3.  Accordingly, even if Hudson had not terminated her employment, she *could not* have worked in "New York City or State" if she wished to remain employed by Hudson.  *Syeed*, 41 N.Y.3d at 451.

Desiderio argues that "[t]o deny NYSHRL and NYCHRL protection here, where the plaintiff had worked in New York for decades and was denied the opportunity to work in New York, would contravene the New York high court's decision in *Syeed*."  Doc. 87 at 9.  However, as Defendants assert, Desiderio's employment history is not relevant to "the situs of plaintiff's employment had she returned to Hudson *after* her medical leave." Doc. 89 at 2 (emphasis added).

Desiderio also argues that Defendants' motion for summary judgment should be denied because Hudson deprived Desiderio of the opportunity to "return to her employment in New York with New York customers, by discriminatorily terminating her."  Doc. 87 at 9.  She cites to *Regan v. Benchmark Co. LLC*, No. 11-cv-4511, 2012 WL 692056 (S.D.N.Y. Mar. 1, 2012) and *Pouncy v. Danka Office Imaging*, No. 06-cv-4777 (RPP), 2009 WL 10695792 (S.D.N.Y. May 19, 2009) to argue that she satisfies the impact requirement because she serviced New York clientele and reported to New York management.  Doc. 87 at 9–10.

However, it is undisputed that Desiderio is a Florida resident, worked primarily from her home in Florida starting during the COVID-19 pandemic, and visited the New York offices too infrequently to meet the impact requirement.  Doc. 44 ¶¶ 4, 9; *Kingston v. International Business Machines Corp.*, 187 A.D.3d 578 (1st Dept. 2020) (holding that

non-resident plaintiff failed to establish subject matter jurisdiction over NYSHRL and NYCHRL claims, it was not enough that "[h]e reported to managers based in New York, served clients mostly based in New York, and travelled to New York State and City two to three times a year, for two to three days each visit, in order to meet with supervisors and service clients."). Most importantly, there was no New York office for Desiderio to return to once she became able to work again, so the impact of the allegedly discriminatory action could not have been felt in New York because she would not have "worked in New York but for an employer's unlawful conduct." Doc. 89 at 3; *see also Syeed v. Bloomberg L.P.*, 58 F.4th 64, 68 (2d Cir. 2023) (deciding the question of "whether, in discriminatory failure-to-hire or failure-to-promote cases, a nonresident plaintiff" could satisfy the impact requirement by alleging that she would have worked in New York but for an employer's unlawful conduct).

Desiderio also argues that Defendants ignore the disputed issue that "but for the Defendants' conduct, Desiderio may have been medically able to return to work at an earlier date before the closing of Hudson's New York office, where she would have continued to work regularly with New York suppliers, vendors, and office staff." Doc. 87 at 11. She adds that "Defendants should not be allowed to use their conduct to shield themselves from liability under the NYSHRL and NYCHRL." *Id.* However, the Court, in its decision on the motion for reconsideration with respect to the Court's denial of summary judgment on the gender-based discrimination claims, already determined that the alleged discriminatory acts were not gender-based. Doc. 75 at 24. Specifically, the Court previously held that "Desiderio fail[ed] to establish that her discipline occurred under circumstances giving rise to an inference of discrimination." *Id.* Accordingly, since the Court already determined that "the impact of pre-termination conduct" did not violate the NYSHRL or the NYCHRL, that same conduct "cannot be the lynchpin for exercising subject matter jurisdiction over" Desiderio's claims pursuant to the NYCHRL or the NYSHRL. Doc. 89 at 4–5.

Because the Court finds that Desiderio cannot show that but for the allegedly discriminatory termination, she would have been expected to work in-person from Hudson's New York offices, both of which ceased to exist by January 2022, she fails to satisfy the requirement under both the NYCHRL and NYSHRL.

## IV.   CONCLUSION

For the foregoing reasons, the motion is GRANTED.  The parties are directed to appear for a conference on March 25, 2026 at 11:30 a.m., in Courtroom 619 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007.  The Clerk of the Court is respectfully directed to terminate the motion.  Doc. 83.

It is SO ORDERED.

Dated:    March 10, 2026
           New York, New York

_____
              EDGARDO RAMOS, U.S.D.J.

12